## Louisville & Nashville Railroad Company and Chesapeake & Ohio Railroad Company v. Schaeffer.

(Decided February 23, 1926.)

### Appeal from Jefferson Circuit Court (Common Pleas, Fourth Division).

1. Carriers—Initial and Connecting Carriers Suable Jointly Where Each was Negligent.—Where, on round-trip shipment over two roads under one bill of lading, considered as two separate shipments, one carrier was negligent on the outward trip and both on the return trip, both were liable to some extent, and could be sued jointly.

2. Carriers—Connecting Carrier, Sued Jointly with Initial Carrier for Damage to Shipment Not Accompanied by Shipper, has Burden of Showing Where Injury Occurred.—The connecting carrier, sued jointly with the initial carrier for damage to shipment not accompanied by shipper, though liable only for damage on its own line, has burden of showing where the injury occurred.

3. Carriers—Delivery of Shipment to Initial Carrier in Good Condition Creates Presumption of Delivery to Connecting Carrier in Same Condition, Throwing Burden on Latter to Show Contrary.—Delivery of shipment to initial carrier in good condition creates

presumption of delivery to connecting carrier in same condition, throwing burden on latter to show the contrary; especially where the carriers are jointly sued and the shipper does not accompany the shipment.

4. Carriers—Carriers of Shipment, Not Accompanied by Shipper, Held Each Liable for Whole Damages, in Absence of Showing as to Where Injury Occurred.—Initial and connecting carriers, sued jointly for damage to shipment not accompanied by shipper, held each liable for the whole damages, in absence of showing as to where the injury occurred.

5. Appeal and Error—Instruction Measuring Damages to Shipment on its Condition in One Market, and Basing Recovery on Condition in Another Market, Held Not Prejudicial.—Instruction measuring damages to shipment on its condition in one market, while basing recovery on condition at another place, held not prejudicial, where the evidence showed conclusively that the shipment had no market value in either place, and that market price at market other than the one mentioned in the instruction was higher than the market price at the market referred to in the instruction.

6. Appeal and Error—Instruction on Measure of Damages, Using Phrase "Contract Price," Instead of Market Price, Held Not Prejudicial.—An instruction on measure of damages to shipment, using phrase "contract price," held not prejudicial, where the evidence showed that the market price was the same as the contract price.

7. Carriers—Shipper Held to Have Done all that he Could to Minimize Damages to Carrier.—Shipper, whose consignee refused to accept shipment because of its damaged condition, held to have done all that he could have done to minimize damages to carrier.

8. Appeal and Error.—Jury's verdict on question as to which the evidence was conflicting cannot be disturbed by the Court of Appeals.

WOODWARD, WARFIELD & HOBSON and HUMPHREY, CRAWFORD & MIDDLETON for appellants.

FRED FORCHT and THOMAS C. MAPOTHER for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

C. A. Schaeffer, a wholesale produce merchant in Louisville, Ky., shipped a car of onions consigned to himself at Charleston, W. Va., via the Louisville & Nashville and Chesapeake & Ohio Railways. The shipment was intended for a customer in that city, a draft being sent a local bank with bill of lading attached. Upon its arrival the cargo was in bad condition and acceptance was refused by the customer, and on Schaeffer's telegraphic order it was returned to him at Louisville under

the same bill of lading. There were 249 sacks of onions, their value on the Louisville market in good merchantable order being $3.65 a sack, or a total of $908.45. The onions arrived in Louisville the second time in such bad condition as not to be marketable; they were removed from the car, rehandled, salvaged and sold for the best price obtainable. After paying the freight to Charleston and back and the cost of rehandling, the net sum of $158.40 was realized therefrom.

Schaeffer sued and recovered a joint judgment of $750.45 from both carriers, and each has appealed. The grounds relied upon for reversal are, erroneous instructions, and that the verdict is in part not sustained by the evidence.

The evidence for the plaintiff is to the effect that the onions were shipped from Louisville on the 9th of April in a refrigerator car. The car was equipped with pipes running through it, connected by plugs with vents leading to the exterior. When the vents and plugs are open there is a circulation of air through the car which in ordinary weather at that season prevents sweating or heating of the contents and is sufficient to preserve freight of this character, but if closed the onions sweat and sprout and this leads to rapid decay.

The onions were shipped to plaintiff from New York on the 28th of March, in the same car with the vents and plugs closed, but on its arrival in Louisville, on the 4th of April, these were opened and the car removed to the Frank Fehr Storage Company, where it remained with the same circulation until the 9th. Upon its arrival in Louisville the cargo was inspected by one of Schaeffer's employees and again inspected by Schaeffer himself on the 8th, the contents being found in good condition on both inspections. On the 9th it was delivered to the L. & N. R. R. Co. for shipment to Charleston, under a bill of lading providing that the vents and plugs must be kept open. It was transferred to the C. & O. Railroad at Covington and arrived at Charleston at 5:30 p. m. on the 11th and did not reach the delivery station until 10:30 p. m. The customer was notified of its arrival and upon examination refused to accept it, and the agent of the C. & O. R. R. Co. wired Schaeffer to that effect. Schaeffer wired his customer, offering a reduction in price, but the latter wired back that the onions were so far gone that he could not handle them on a small market and advised

transferring them to a larger market. Thereupon Schaeffer wired the C. & O. agent to receive the bill of lading with draft attached immediately and return to him at Louisville; to keep vents open and plugs out and to rush without delay. The return was made at once under the original bill of lading, upon which was indorsed the instruction as to vents and plugs. The shipper did not accompany the car, but the ventilation record kept by the two railroads shows affirmatively that each of them violated the instructions as to keeping open plugs and vents. On the outgoing trip this was done by the C. & O. and on the return trip by both, hence there can be no question of plaintiff having a cause of action against both carriers. Appellants' evidence is to the effect that the onions were in bad condition while in Louisville prior to April 9th, but no attempt is made to allocate their liabilities.

The first instruction authorized the jury to find for the plaintiff if the onions were in good marketable condition when they left Louisville and in bad condition when they arrived in Charleston, unless they believed that the damage, if any, was occasioned by the inherent vice of the onions, the converse of this being given for defendants. The measure of damages in the event of a verdict for plaintiff was fixed at the difference between the contract price of sale and the value of the onions in the condition that they were received back in Louisville. It is argued that these instructions were inconsistent and confusing, in that recovery was predicated on the condition of the onions at Charleston and the measure of damage based on their condition on another market. It is further argued for appellants that the transaction embraced two shipments, the first originating in Louisville with the L. & N. as the initial carrier, and the second or return shipment originating in Charleston with the C. & O. R. R. as the initial carrier; that the L. & N. Railroad's liability in the first shipment ceased with the failure of the consignee to accept the cargo at Charleston, and is to be governed by the condition of the cargo at that time, and the marketing conditions existing in that city; that no additional damages are shown on the return trip for which it can be held liable. For the C. & O. it is said that as a connecting carrier it is liable only for the damage occasioned on its line, it having offered an instruction to that effect, and that the court erred in overruling

that instruction, and permitting a recovery against it for the entire damage. For appellee it is argued that there was a single shipment under one bill of lading, which set no time at which the liability of the carrier should end, and that of a warehouseman ensue; that it is shown by the proof that the car remained in Charleston less than 48 hours, and no demurrage was claimed by the carriers, and that it was returned over the same lines to the consignor by an indorsement upon the original bill of lading, all of which constituted one contract and therefore the initial carrier was liable for all damages occasioned on the entire trip.

However, we find it unnecessary to decide this question. Even if construed as two separate shipments, with the L. & N. as initial carrier on the outbound trip and the C. & O. as initial carrier on the return trip, there can be no question but that both can be sued jointly for the entire amount of damages resulting from the round trip. The L. & N. would be liable as initial carrier on the first trip and as connecting carrier on the return trip, and the same principle would apply to the C. & O. except that it would be liable as connecting carrier in the first instance and as initial carrier on the return trip. As there is evidence that the C. & O. was negligent on the outward trip and both were negligent on the return trip, both are liable to some extent. True the connecting carrier is only liable for the injuries occurring on its own lines, but where the shipper does not accompany the freight, the burden is upon the carrier thus sued to show where it occurred. If the cargo was in good condition when delivered to the initial carrier, the court will entertain the presumption that it was delivered to the connecting carrier in the same condition, and the burden is upon it to show the contrary. McArthur v. Payne, 201 Ky. 793; C. & O. Ry. Co. v. Williams, 156 Ky. 114; Chi. & N. W. Ry. v. Whiterock, 258 U. S. 369. Especially is this true where the carriers are jointly sued, and the shipper has not accompanied the shipment, as in such cases it is peculiarly within the power of the defendants to show where the injury occurred, and failing in this each can be held liable for the entire damage assessed. See Williams case *supra*. In this case the defendants made no effort to allocate the damage, and there was no evidence upon which to base a separate instruction in favor of the C. & O. as asked by it. It follows that the

court did not err in refusing that instruction and in giving an instruction upon joint liability.

The measure of damage instruction is not aptly drawn, but we fail to see how either of the defendants is prejudiced by it. The proof is conclusive that the market price of the onions in good condition was higher in Charleston than in Louisville, and that in the condition that this cargo was in it had no market value in either market; hence if the court had fixed the measure of damage to accord with the conditions at the Charleston market, the recovery would have been larger. No doubt the real measure of damage would be the difference between the market value of the onions in Louisville, if they were in good condition, and the value of the onions in the condition in which they were received, but as the market price at that place is shown to have been the same as the contract price, the instruction was not prejudicial.

Appellee properly did all he could to minimize the damages, and under the court's instruction the appellants were credited by this, and of this have no just ground of complaint.

In the last place it is argued that the onions were in bad condition when delivered to the carrier at Louisville and that the verdict of the jury disregarding this is not sustained by the evidence. But the evidence on that question was conflicting, and as its decision was a matter peculiarly within the province of the jury, we are not authorized to disturb their verdict.

On the whole case, perceiving no error prejudicial to the substantial rights of the appellants, the judgment is affirmed.