# E. J. O'Brien & Company v. Davis, Director General of Railroads, et al.

(Decided November 23, 1926.)

## Appeal from Jefferson Circuit Court (Common Pleas, Second Division).

1. Carriers.—Under Kentucky Statutes, section 201d, initial intra-state carrier, receiving in good condition goods delivered by connecting carrier in damaged condition, is liable for loss.

2. Carriers.—Initial carrier is not liable, under Kentucky Statutes, section 201d, for damages to goods because of defective packing before receipt or inherently defective condition.

3. Carriers.—Whether tobacco, delivered by connecting carrier in damaged condition, was in good condition when delivered to initial carrier, held for jury.

4. Carriers—Submission of Issues Whether Tobacco was in Good Condition when Delivered, or was Damaged Because of Improper Packing and Defective Condition Before Receipt by Initial Carrier, Held Not Warranted.—Evidence held not to warrant submission to jury of question whether tobacco was in good condition when delivered by connecting carrier, was damaged after receipt in good condition by initial carrier because of improper packing and defective condition.

5. Appeal and Error—Submission of Issues, Not Sustained by Evidence, as to Condition of Tobacco when Delivered and Damage Because of Improper Packing or Defective Condition Before Receipt by Initial Carrier, Held Prejudicial Error.—Submission of issues, not sustained by evidence, as to whether tobacco was in good condition when delivered by connecting carrier, or damaged because of improper packing and defective condition before receipt by initial carrier, held prejudicial error.

6. Carriers.—At common law, which is unchanged by Kentucky Statutes, section 201, connecting carrier is liable only for loss or damage on its own line.

7. Carriers.—Where goods delivered to initial carrier in good condition are received from terminal carrier in bad condition presumption is that loss occurred on latter's line.

8. Carriers—Evidence Held Insufficient, as Matter of Law, to Rebut Presumption that Loss Occurred on Line of Terminal Carrier Delivering Goods in Bad Condition.—Evidence held insufficient, as matter of law, to rebut presumption that loss occurred on line of terminal carrier, delivering in bad condition goods delivered to initial carrier in good conditon.

9. Carriers—Connecting Carrier, Delivering Goods in Damaged Condition, will be Held Liable Without Proof of Fault, in Absence of Showing that it Received them in Such Condition.—Connecting carrier, completing transportation and delivering goods to consignee in damaged condition or deficient quantity, will be held liable,

without proof that loss was caused by its fault, in absence of showing that it received goods in condition in which delivered.

THOMAS A. BARKER, CHARLES F. TAYLOR and THOMAS C. MAPOTHER for appellant.

HUMPHREY, CRAWFORD & MIDDLETON and LOUIS SEELBACH, JR., for appellee Davis.

H. L. MEANS and JOHN L. WOODBURY for appellee Cumberland Transportation Company.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

In the winter of 1918, three shipments of tobacco were made from Burkesville to E. J. O'Brien & Company at Louisville. The shipments moved on through bills of lading issued by the Cumberland Transportation Company as initial carrier. The Cumberland Transportation Company carried the goods from Burkesville to Burnside. There they were delivered to the Cincinnati, Burnside and Cumberland Railway, a switching line some two miles in length, which in turn delivered them to the Cincinnati, New Orleans & Texas Pacific Railway at Burnside. They were carried by the latter company to Danville, where they were delivered to the Southern Railway in Kentucky, which carried them from Danville to Louisville. The first shipment of 14 hogsheads was not damaged in transit. The second shipment of 41 hogsheads, which was loaded on the steamer Rowena at Burkesville on January 10, did not get to Burnside until January 28, and was not turned over to the Cincinnati, Burnside & Cumberland River Railway until January 31. This shipment was delivered to the Southern Railway at Danville on February 2, and arrived in Louisville on February 3. The third shipment of 20 hogsheads, which left Burkesville on February 5 was in transit on the Cumberland river until February 7, when it was delivered to the connecting carrier at Burnside. This tobacco was then loaded in two box cars and delivered to the Southern Railway at Danville on February 8. It was then carried to Louisville and delivered to the consignee on February 12. The two shipments of 41 hogsheads and 20 hogsheads reached Louisville in a badly damaged condition.

In this action for damages against the Cumberland Transportation Company and J. C. Davis, Director General of Railroads, etc., operating the Southern Railway in Kentucky, the latter went out on a peremptory instruc-

tion and the jury found in favor of the Cumberland Transportation Company. Plaintiff appeals.

In addition to the instruction on the measure of damages, the court instructed the jury as follows:

"No. 1. It appears in this case that the defendant, Cumberland Transportation Company, received from the plaintiff, E. J. O'Brien & Company, at Burkesville, Ky., for shipment to E. J. O'Brien & Company at Louisville, Ky., two shipments of tobacco in hogsheads, to wit: 41 hogsheads on January 10, 1918, and 20 hogsheads on February 5, 1918. If you believe from the evidence that at the time such tobacco was received by the Cumberland Transportation Company it was in good merchantable condition, and was delivered to the plaintiff, O'Brien & Company, at Louisville, Ky., in a damaged and injured condition, the law of the case is for the plaintiff, E. J. O'Brien & Company, and against the defendant, Cumberland Transportation Company, and you should find for the plaintiff against said defendant; but unless you believe from the evidence that at the time the tobacco was received by the defendant, Cumberland Transportation Company, it was in good, merchantable condition and that at the time it was delivered to the plaintiff at Louisville, Ky., it was in a damaged and injured condition, then the law of the case is for the defendant, Cumberland Transportation Company, and you should so find.

"No. 2. The court further instructs you that if you believe from the evidence that the tobacco, prior to and at the time of its reception by the defendant, Cumberland Transportation Company, on its boat or boats, was in an injured or damaged condition, or had been improperly packed, or that the same was inherently in a defective condition, and that such injuries or damages, if any, to the tobacco after it was received and before it was delivered was caused and brought about by such defective packing or inherently defective condition, if any there were, then the law of the case is for the defendant, Cumberland Transportation Company, and you should so find."

1. Under section 201-d, Kentucky Statutes, regulating intrastate shipments, the initial carrier is liable for loss or damage to the property committed to its care

throughout the entire route until delivered to the consignee. Therefore, the instructions were proper, provided the evidence was sufficient to take the different issues to the jury. Though the direct evidence on the question tends very strongly to show that the tobacco was in good condition when delivered to the initial carrier, yet, in view of the weather conditions at the time, and of the further fact that the tobacco stood on the river bank for several hours uncovered, and that the roof of the warehouse where it was stored prior to the shipment leaked, coupled with some evidence tending to show that the damage did not occur while the tobacco was being transported, we are constrained to hold that the court did not err in submitting the question whether the tobacco was in good condition when delivered. However, we are unable to find any evidence in the record from which it could be even inferred that the tobacco was in good condition when delivered in Louisville. On the contrary, the uncontradicted evidence shows that it was badly damaged when delivered there, and we conclude that its condition when it was delivered should not have been submitted to the jury. We are also forced to the same conclusion in regard to the issue of improper packing and defective condition. There is no evidence either of improper packing or defective condition at the time of the shipment. On the contrary, the evidence of those who looked after the packing and shipment that the tobacco was properly packed and in good condition when packed is not only uncontradicted, but finds support in the uncontradicted evidence of those who examined the tobacco on its arrival at Louisville, and stated that its damaged condition was due solely to water. Since it is impossible to tell from the verdict whether the jury believed the tobacco was delivered in bad condition at Burnside, or was received in good condition at Louisville, or that its damaged condition was due to improper packing or its defective condition, we conclude that the submission of issues not sustained by evidence was prejudicial error, and that the judgment must be reversed as to the Cumberland Transportation Company.

2. We shall next consider the propriety of the court's action in awarding the Southern Railway a peremptory instruction. Section 201, Kentucky Statutes, like the Carmack amendment regulating interstate shipments, does not purport to deal with connecting carriers;

but leaves their liability as between themselves, and as between them and the shipper or consignee, the same as the common law. Oregon-Washington R. & Nav. Co. v. McGinn, 258 U. S. 409, 66 L. ed. 689, 42 Sup. Ct. 332. At common law a connecting carrier is liable only for loss or damage occurring on its own line. McArthur v. Payne, 201 Ky. 793, 258 S. W. 684. However, where it appears that the goods were delivered to the initial carrier in good condition and received from the terminal carrier in bad condition, there is the presumption that the loss occurred on the line of the delivering carrier. The Southern Railway takes the position that this presumption was completely overthrown by the evidence which it introduced, and that therefore there was no issue for the jury. In support of this position it relies upon the evidence of R. J. Whelan, appellant's agent, that the tobacco showed plainly that it had been standing in water and was not damaged by rain; the evidence of C. F. Arnold, its car inspector, that he examined the cars in which the shipments were made on their arrival at Louisville, and found the cars to be in good condition and the roofs and sides sound; the evidence of its yard master at Danville that there was no water there during January or February, and that the cars were not open at Danville; and the evidence of W. R. Walter that he was thoroughly familiar with every bit of the track between Danville and Louisville and with the railway yards at both places, and that the tracks were all on high land and that no part of the track, either in Danville or Louisville or between those points, was under water during January or February, 1918. We are not prepared to say that a case may never arise in which the delivering carrier may not completely rebut the presumption against it so as to leave nothing for the jury, but we do not regard the showing in this case as sufficient for that purpose. As said by the U. S. Supreme Court in Chicago & Northwestern Ry. Co. v. Whitnack Produce Company, 258 U. S. 369, 66 L. ed. 665, 42 Sup. Ct. 328, "A connecting carrier who has completed the transportation and delivered the goods to the consignee in a damaged condition or deficient in quantity, will be held liable in an action for the damage or deficiency, without proof that it was occasioned by his fault, unless he can show that he received them in the condition in which he delivered them." Here, there is no evidence of the condition of the tobacco when received by

the Southern Railway. Nor is there any direct evidence by those who accompanied the tobacco that it was not damaged on the railway company's line. The most that can be said is that there was evidence from which it might be inferred that it was not damaged, but was received by it in its damaged condition. As we view, it, there is simply a presumption on the one hand and an inference on the other, thus presenting an issue for the jury, and not a case where it can be said as a matter of law that the presumption was completely overcome. For this reason we are constrained to hold that the court erred in awarding appellee a peremptory instruction.

As the jury may not understand that the initial carrier is liable for any loss or damage occurring throughout the entire route and may conclude that such carrier is not liable if the loss did not occur on its own line, we are of the opinion that on another trial the court should instruct the jury in substance that the tobacco was delivered at Louisville in a damaged condition, and that if they believe from the evidence that it was delivered to the Cumberland Transportation Company at Burkesville in good condition they will find against the Cumberland Transportation Company whether the loss or damage occurred on its line, or on the Cincinnati, Burnside & Cumberland Railway, or on the Cincinnati, New Orleans & Texas Pacific Railway, or on the line of the Southern Railway. The court will also tell the jury that if they believe from the evidence that the tobacco was delivered to the Cumberland Transportation Company at Burkesville in good condition, they will find against James C. Davis, agent, etc., of the Southern Railway unless they believe from the evidence that the loss or damage did not occur on that company's line.

Wherefore, the judgment is reversed both as to the Cumberland Transportation Company and James C. Davis, agent, etc., of the Southern Railway Company, and the cause remanded for a new trial not inconsistent with this opinion.