## Urban v. Commonwealth.

(Decided October 6, 1922.)

### Appeal from Boyd Circuit Court.

1. Intoxicating Liquors—Evidence.—Evidence examined as set out in the opinion, and held that it was sufficient to authorize a conviction of appellant under an indictment charging him with unlawfully keeping whiskey in his possession for sale.

2. Criminal Law—Instructions.—Instructions in criminal causes should follow the language of the Code and submit the issue of the defendant's guilt upon the evidence as a whole and should not particularize or call attention of the jury to any special class of testimony whereby the jury might be misled by any intimation as to the conclusion of the court from the language of the instruction, since it is the duty of the jury to weigh all the testimony, both direct and circumstantial, without directions as to the sufficiency or insufficiency of either class or their right to convict upon either class.

3. Criminal Law—Instructions.—But the error in so instructing the jury, like all others, in order to authorize a reversal must appear, in the light of the entire record, to have substantially prejudiced

the rights of the defendant, and where from the entire record it is clear that no such rights were so prejudiced the judgment will be affirmed notwithstanding the erroneous instruction.

. S. S. WILLIS AND R. S. DINKLE for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Lou Urban, was indicted and convicted in the Boyd circuit court of the offense of unlawfully keeping in his possession whiskey for sale. His motion for a new trial was overruled and he appeals. The indictment was not, nor could it successfully be attacked, since it literally conforms to the approved practice of criminal pleading. It is vigorously insisted, however, by appellant's counsel that (1), the Commonwealth failed to prove its case and the court erred in overruling the motion for a directed verdict of acquittal, but if mistaken then, that (2), the verdict is flagrantly against the evidence, and (3), error of the court in adding to instruction number one its last clause, which said: "And in determining the guilt or innocence of the defendant on the indictment and his intent the jury have a right to consider all the facts and circumstances proven in the evidence and you may convict him upon circumstantial evidence if from same you shall believe he has been proven guilty of the offense charged in the indictment beyond a reasonable doubt."

Since grounds (1), and (2), relate exclusively to the evidence (including some to which objection was made and which will be hereafter noticed), we will consider and determine them together. The place where the whiskey was alleged to have been unlawfully kept, and where a quantity of it was found by two Federal prohibition officers operating under a Federal search warrant, was a soft drink stand in Ashland located in a building known as the "Kobs Building," containing about two or three rooms on the ground floor and some three or four stories high, the entire building being rented by the appellant who prior to the taking effect of national prohibition operated a saloon in the soft drink stand and he continued its operation after then for the purposes last named until August 23, 1920, when he sold his business and sublet the room to his son-in-law, Patrick, and Charlie

McGlothlin. The latter shortly sold his interest to Patrick but after a few months again purchased the business and sold it to Lon Weeks, the father of appellant's other son-in-law, the latter of whom assisted in running the business for his father. C. M. Holbrook testified for the Commonwealth that he, some time prior to the search, which was on March 16, 1921, purchased from appellant some whiskey in the soft drink stand and, while he endeavored to weaken his testimony by an evasive memory as to the time of the purchase by him, as well as the person from whom it was made, we are thoroughly convinced that it occurred but a short while before the search and that it was made from appellant. This testimony, of course, was admitted as bearing on the issue of the purpose for which the whiskey was kept, which we have held in a number of cases was competent for that purpose.

The contention is made on behalf of appellant that the subletting of the property referred to conclusively showed that he had no interest in the place where the whiskey was found and that it was not in his possession either for sale or any other purpose, which possibly would be true if there was no question as to the *bona fides* of the subrenting. In the first place the entire premises, including the soft drink stand, were leased by the appellant, who paid the rent. No consideration was attempted to be shown for any of the subrenting contracts relied on, and it appears from appellant's witnesses that he was in and about the soft drink stand several times each day, although he claims he went there only at rent collecting periods. All the rent which he claims to have collected from his subtenants was paid by cash and no receipts were given to any of them. Appellant secured the payment of the gas, light and water rent of the premises, and it is proven by him and all of his witnesses who had any connection with the operation of the business that all the bills for supplying the soft drink stand, as well as the restaurant at the rear of it, were charged to and made out against him. Other suspicious and more or less convincing facts appear in the record, all of which, to our minds, fully authorize the conclusion that the pretended subrenting of the place, which continued to be known all the while as "Urban's Place," was but a subterfuge or evasion by which the actual ownership and operation of the business were concealed in the name of his son-in-law and others upon whom he could rely for that purpose. This

conclusion is most strongly fortified by the fact that throughout the entire time the expenses of operating the premises, including the supplies therefor, were made out in the name of appellant, a portion of which he admitted that he agreed to and did secure, but he was silent as to whether he paid it. We think it is easy to discover the truth behind the defensive shadow or screen thus thrown into the case by appellant. However, it is not essential to his conviction that he should actually own or operate the soft drink stand, or any business conducted in the room where the whiskey was found, since if he kept the whiskey at that place for the purpose of sale he would be guilty notwithstanding the conducted business therein was owned and operated by another.

But, in this connection it is insisted that the court improperly allowed the prohibition agent, Ort, to testify concerning the bills for the supplies furnished in operating the business, and which he found while searching the premises, without introducing the bills themselves, in the absence of a showing that they were lost or otherwise destroyed. This no doubt would be true if the witness had given testimony as to the contents of the bills but which he did not do. He was asked if he made a search for any records or papers in the building and testified: "Yes, sir, after Albert Urban (a brother of appellant) had repudiated the statement he had made to me I made a search for evidence. Q. What did you find? A. I found a number of bills for merchandise bought for the restaurant. Q. What are the bills for? A. Merchandise that was used in the soft drink stand and in the restaurant, I have those bills and am holding them now. Q. Have you the bills with you? A. Not with me, they are at home; I expect to present them before the Federal court." It will be observed that the witness did not connect appellant with any of those bills nor did he pretend to testify as to the person against whom they were made or for what they were made. Following that testimony appellant, and all those having any connection either with the restaurant or the soft drink stand while they were being operated by the alleged subtenants, were introduced for the defense and testified that all the bills were made out in the name of appellant and all the supplies were charged to him by the various merchants from whom they were bought, but appellant testified that he protested after he discovered it, but without avail. That evidence rendered

the otherwise incompetent testimony of the prosecuting witness competent and the proven conduct, as we have hereinbefore intimated, does not comport with independent operation by the alleged subtenants. It, therefore, results that grounds (1) and (2) can not be sustained.

The objection to the instruction, as contained in ground (3), in so far as it is insisted that it was erroneous, must be admitted. While it may be conceded that the objectionable language contains a correct statement of an abstract principle of law, yet this court has consistently held in numerous cases that it was error to so instruct the jury. Brady v. Commonwealth, 11 Bush 282; Stickley v. Commonwealth, 7 Ky. L. R. 226; Smith v. Commonwealth, 140 Ky. 599; Minniard v. Commonwealth, 158 Ky. 210; Whitehead v. Commonwealth, 192 Ky. 428, and Bullington v. Commonwealth, 193 Ky. 529. The appeals in the last two cases were from the same court as this one and the condemned instruction therein, which was substantially the same as we have here, was given by the same trial court. In the Whitehead case the opinion conceded that the added language set forth a true principle of law but that to incorporate it in an instruction might have the effect of intimating to the jury the opinion of the court that the evidence as a whole justified the conviction, and then added: ''Under our system in a criminal or penal cause, the jurors are the sole judges of the weight and potency to be given to the evidence in determining the existence of facts, and the court should not invade their province.'' At the close of the opinion there was inserted, for the guidance of trial courts, proper instructions to be given in the trial of such cases (the same as we have here), and in which the objectionable language was omitted. In the Bullington case the opinion said that the effect of the instruction was to direct the attention of the jury to a particular class of evidence, some of which in that case was incompetent, and to carry with it an intimation that it was the conclusion of the court that such evidence was in itself sufficient to authorize a conviction.

Under such plain and unmistakable rulings of this court we would feel ourselves compelled to reverse the judgment were it not for the fact that we are thoroughly convinced, from the entire record, of appellant's guilt and that the error in giving the instruction could not and did not prejudicially operate against him. Sections 340 and 353 of the Criminal Code authorize a reversal of con-

viction for errors committed by the trial court only "when, upon consideration of the whole case, the court (this court) is satisfied that the substantial rights of the defendant have been prejudiced thereby," which is to say, that unless the defendant's substantial rights have been prejudiced by the complained of error a reversal should not be ordered; and we have followed that interpretation of the sections in a number of cases, among which is the recent one of Sweazy v. Commonwealth, 193 Ky. 1, but in that opinion the section of the Code authorizing it was erroneously referred to as 271 instead of the two above mentioned.

In the case of Skaggs v. Commonwealth, 196 Ky. 399, the same error, committed by the same court, was under consideration and the practice of adding the objectionable language to the instruction was again condemned, but for the same reason herein stated the judgment was affirmed.

Before closing the opinion we feel that the attention of trial courts should again be called to the erroneous practice herein dealt with and to admonish them that in many prosecutions the case for the Commonwealth might not be so favorably circumstanced, in which case a reversal would be compelled because of the error which we have so frequently condemned.

For the reasons indicated, we have concluded that in the light of the whole record the error referred to was not prejudicially erroneous and the judgment is affirmed.