# McArthur v. Payne, Director General Railroads.

(Decided February 5, 1924.)

## Appeal from Jefferson Circuit Court (Common Pleas, First Division).

1. Carriers—Connecting Carrier Only Liable for Injuries Occasioned by Negligence Occurring on Own Line.—Connecting carrier in interstate shipment, other than the initial carrier, is liable only for injuries occasioned by negligence occurring on its own line, in view of the Carmack Amendment to the Hepburn Act (U. S. Comp. St., sections 8604a, 8604aa).

2. Carriers—Burden on Connecting Carrier to Show it was Not Negligent.—Under the Carmack Amendment to the Hepburn Act (U. S. Comp. St., sections 8604a, 8604aa) in an action against connecting carrier for damage to cattle, plaintiff need not allege and prove negligence occurred on connecting carrier's line, the burden of proof being on the defendant in that respect.

3. Evidence—Burden of Proof on Party having Peculiar Knowledge. —When a particular fact necessary to be proven rests peculiarly within the knowledge of one of the parties, the burden of proof rests upon him.

4. Carriers—Initial Carrier Agent of Connecting Carrier, and Latter Bound by Contract.—The initial carrier in an interstate shipment is the agent of the connecting carriers, and they are bound by its contract, and by the original contract and not by unauthorized notations made on the bill of lading.

THOS. C. MAPOTHER for appellant.

TRABUE, DOOLAN, HELM & HELM, B. D. WARFIELD and J. J. DONOHUE for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

This suit was brought to recover damages sustained in transit on three different shipments of cattle between Ashford, Ala., and Louisville, Ky. In separate paragraphs it was alleged that the cattle were delivered to the initial carrier, the Atlantic Coast Line Railway Company, in good condition and that when received by the consignee from the delivering carrier, the Louisville & Nashville Railroad Company, at Louisville, Ky., they were in bad condition; it being further alleged that there was an unreasonable and negligent delay in transit and that this caused the injury complained of. As to the third shipment it was also alleged that the cattle were deliv-

ered to the consignee at Louisville as "southern" or "quarantine" cattle; that by reason of this they were placed in a separate classification in the stockyards and could only be sold to a certain class of trade, and thereby the price realized for them was much less than for cattle not so restricted; that the cattle were not of the class described and were entitled to be placed on the market without any restrictions, and that such restrictions and limitations were occasioned by the negligence of the defendant, the L. & N. R. R. Co.

The two companies were joined as defendants, but service was had only on the agent representing appellee in the operation of the L. & N. R. R., and recovery is only sought against appellee as its agent.

The learned trial judge was of the opinion that in order to recover against a connecting carrier other than the initial carrier in an interstate shipment, the burden is upon the plaintiff to plead and prove that the alleged injury occurred on the lines of defendant carrier, and on this theory sustained the demurrer to the first two paragraphs of the petition, which pleading was then amended to conform to that theory.

Plaintiff's evidence was to the effect that the stock was delivered at Ashford, Ala., to the initial carrier in good condition; that it was received in Louisville in bad condition and that the length of time the stock were in transit was unusual and unreasonable, and by reason of its length the cattle suffered in weight and condition; also one of them was missing. But no evidence was introduced as to their condition when received by defendant, L. & N. R. R. Co., or as to the length of time they were under its control, or the exact time they were received by it, and on this account exceptions were sustained to the first mentioned proof.

As to the third paragraph, the plaintiff's evidence showed that the waybill covering the shipment in question, and upon which they were delivered to the consignee in Louisville contained pencil notations, "southern cattle" "quarantine" "for immediate slaughter;" and that such cattle, while not necessarily unhealthy, are presumed to have had an opportunity for infection; that this might later develop and that such stock must be treated before being placed upon the open market, or otherwise sold for immediate slaughter, and that this materially diminishes the sale price below that of free cattle. It is not shown where or by whom these notations were made.

Ashford and Louisville are both in free territory and the cattle were not subject to the limitations mentioned, and none were placed on the original bill of lading, the notations on the waybill being a blunder upon the part of the carrier.

At the conclusion of plaintiff's evidence the court gave a peremptory instruction to the jury to find a verdict for defendant, which was done, and the plaintiff has appealed.

This being an interstate shipment it falls within the provisions of the Carmack amendment to the Hepburn act. It is settled that a connecting carrier, other than the initial carrier, is liable only for injuries occasioned by negligence occurring on its own line; but the decisions are not in harmony among the different courts as to whether that amendment was cumulative or exclusive of the common law rules of presumption as between such carriers. It has been held that as the amendment gives the right of action to the shipper against the initial carrier for all damages for negligence arising throughout the shipment, it was intended to afford a general remedy to the exclusion of all others except to the extent that the carrier upon whose lines the damage actually occurred was liable in a separate suit, and that the burden in such cases is upon the shipper to allege and prove that the damage occurred on its lines. John Brown & Co. v. Delaware L. & W. Ry. Co., 239 Fed. 590; Pennington v. Grand Trunk Ry. Co., 115 N. E. 170; Hudson v. C. St. Paul & O. Ry. Co., 226 Fed. 38.

And the same construction is intimated in Sou. Ry. Co. v. Avey, 173 Ky. 598; this in an effort to accord with the federal courts on this question, though as to the delivering carrier the contrary has been held as the common law rule of presumption in our state courts. C. & O. R. R. Co. v. Williams, 156 Ky. 114.

Without citing the numerous cases taking the latter view, it seems that the question has been settled in the late case of Chi. & N. W. Ry. Co. v. C. C. Whitnack Produce Co., 258 U. S. 369. There a shipment of apples was received in New York in good condition and transported over the lines of connecting carriers but were frozen when delivered. As to the presumption of liability of the delivering carrier the court said:

> "The single question now presented for consideration is whether, since the Carmack amendment, a presumption arises that the injury occurred on the

delivering carrier's line, when goods moving in interstate commerce upon a through bill of lading are delivered in bad condition and the evidence shows that they were sound when received by the initial carrier but does not affirmatively establish where the loss occurred.

"It is established doctrine that the rights and liabilities in respect of damage to goods moving in interstate commerce under through bills of lading depend upon acts of Congress, agreements between the parties and common law principles accepted and enforced in the federal courts. New York Central, &c., Ry. Co. v. Beaham, 242 U. S. 148. While this court has not expressly approved it, we think the common law rule supported both by reason and authority, is correctly stated in section 1348, Hutchison on Carriers, third edition:

" 'A connecting carrier who has completed the transportation and delivered the goods to the consignee in a damaged condition or deficient in quantity, will be held liable in an action for damage or deficiency without proof that it was occasioned by his fault, unless he can show that he received them in the condition in which he has delivered them. The condition and quantity of the goods when they were delivered to the first of the connecting carriers, being shown, the presumption will arise that they continued in that condition down to the time of their delivery to the carrier completing the transportation and making the delivery to the consignee, and that the injury or loss occurred while they were in his possession.'

"The petitioner insists that this common law rule conflicts with the Carmack amendment to the interstate commerce act, c. 3591, 34 Stat. 584, which requires issuance of a through bill of lading by the initial carrier and declares it liable for damages occurring anywhere along the route, as interpreted and applied by this court. But we find no inconsistency between the amendment or any other federal legislation and the challenged rule. . . . Here there is no question of conflict between a state statute and any federal policy; and nothing in the words of the amendment indicates a legislative purpose to abrogate the accepted common law doctrine concerning presumption. The suggestion that by imposing additional liability upon the initial carrier the amend-

ment provides an adequate remedy for shippers and thereby removes the necessity for any presumption against the terminal one and impliedly abrogates the rule is unsound. There are adequate reasons why shippers should have the benefit of both, and we think Congress so intended."

In the application of the rule an attempt is made to distinguish between unreasonable delay and other forms of negligence, but if it is a correct principle we are convinced that this is a proper case for its application. The appellee may easily adduce proof as to the time it received the stock and their condition; this the appellant may not do. As was said in Mitchell v. Ry. Co., 124 N. C. 236: "It is a principle of law that when a particular fact necessary to be proven rests peculiarly within the knowledge of one of the parties upon him rests the burden of proof." The basis of this rule was laid down in similar language in Brinstall v. Saratoga, &c., Ry. Co., 32 Vt. 667, and has been applied to negligent delay in transportation in Central of Ga. Ry. Co. v. Goodwater, 69 Sou. 343; Harper Furniture Co. v. Southern Express Co., 57 S. E. 640; G. C. & S. Ry. Co., v. Brackett (Tex.), 162 S. W. 1191.

As to the notations on the waybill it is an established rule of this court that the initial carrier is the agent of the connecting carriers in a through shipment and that such connecting carriers are bound by its contract (C. N. O. & T. P. Ry. Co. v. Luke, 169 Ky. 560; Alcorn v. Adams Express Co., 148 Ky. 352), and this is in harmony with the Federal decisions, G. F. A. Ry. Co. v. Bleich Milling Co., 241 U. S. 190; McGinn v. Oregon, &c., Co., 265 Fed. 81.

The original contract between the parties was the bill of lading, and it cannot be varied or controlled by notations made by the carriers on the waybill, and so far as liability to appellant is concerned it is immaterial by whom such notations were made.

We conclude that the trial court erred in rejecting the offered evidence and in giving a peremptory instruction.

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.