## Murphy v. Commonwealth

(Decided November 11, 1924.)

### Appeal from Boyd Circuit Court.

1. Criminal Law—Instructions, Grouping Together and Giving Un-
due Prominence to Certain Particular Facts, are Erroneous.—In-
structions, grouping together and giving undue prominence to
certain particular facts, to exclusion of other facts which jury
has the right to take into consideration, are erroneous.

2. Homicide—Prior Threats, Language, and Conduct of Deceased are
Admissible as Substantive Evidence.—Where self-defense is set
up, prior threats, as well as language and conduct of deceased, are
admissible as substantive evidence.

3. Homicide—Instruction on Self-Defense, Singling out Prior Threats
and Conduct of Deceased and Limiting their Effect, was Errone-
ous.—An instruction on self-defense, stating that prior threats
and conduct of deceased would not justify defendant in shooting
at time of killing, unless he then and there believed, and had
grounds to believe, that deceased was about to kill him or inflict
on him great bodily harm, was erroneous, as singling out and
limiting effect of prior threats and conduct.

WAUGH & HOWERTON for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS F.
CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

This is an appeal from a judgment based on a ver-
dict finding appellant guilty of manslaughter, and fixing
his punishment at five years' imprisonment in the peni-
tentiary.

The facts are these: The deceased, Dan McKnight,
was an uncle of appellant, and, some time prior to the
homicide, appellant was required to appear before the
grand jury and give evidence of McKnight's violation
of the prohibition act. On the afternoon of the homicide
McKnight left home with James Blair and John Buck-
ley and they went up a hollow to a coal bank. While
they were near the tipple, appellant and Alvin Hutchi-
son came along the hill en route to a point above the coal
bank. On seeing appellant John Buckley called him and
told him that he wanted to see him. Appellant hesitated,
but on being called again he went to a point near the coal
tipple to meet Buckley. While talking with Buckley,
McKnight broke into their conversation and asked ap--

pellant why he had been telling damn lies on him. Appellant replied that he had not told any lies, but McKnight insisted that he had, and repeatedly cursed and called appellant vile names. During the quarrel McKnight walked up on the bank in front of appellant. According to James Blair, a witness for the Commonwealth, the deceased did not have his pistol in his hand, nor attempt to harm appellant, but he admits that he had started to leave and his back was turned toward the combatants. When the shooting was over, however, he found McKnight's pistol lying by his side. According to appellant, the deceased, during the altercation, was moving around him in a circle so that the deceased was on one side and the embankment on the other. When about eight feet away the deceased drew his pistol from his pocket and appellant then fired. Alvin Hutchison testified that he saw there was going to be trouble and turned and walked away. At that time McKnight had his hand on his hip pocket, but he did not see McKnight put his hand in his pocket. During the shooting he was looking at appellant. There was further evidence of threats made by the deceased against appellant.

In addition to instructions on murder, manslaughter, self-defense and reasonable doubt, the court gave the following instruction:

"The jury are further instructed that although you may find and believe from the evidence that the deceased, Dan McKnight, previous to the occasion when he was shot and killed had some previous difficulty or difficulties with the defendant, Ed. Murphy, and then or at other times threatened to kill the defendant, or do him some great bodily harm, that these acts or threats and conduct of the said Dan McKnight did not justify the defendant in shooting said McKnight at the time and on the occasion in question unless the defendant then and there believed, and had reasonable grounds to believe, that the said Dan McKnight was then and there about to kill him, or inflict upon him some other great bodily harm.

"And the jury are further instructed that although they may believe from the evidence that on the occasion in question when the said Dan McKnight was shot and killed that he used in and in the presence of the defendant some abusive lan-

guage that his conduct in doing so did not justify the defendant in killing him, or even shooting at him with a pistol."

We have repeatedly condemned instructions that group together and give undue prominence to certain particular facts to the exclusion of other facts which the jury has the right to take into consideration, and have stressed the importance of giving an instruction on self-defense in the usual form, thus leaving the question to be determined by the jury in the light of all the facts, whether relied on by the Commonwealth or the accused. Howard v. Commonwealth, 202 Ky. 711, 261 S. W. 246; Mullins v. Commonwealth, 172 Ky. 92, 188 S. W. 1079; Commonwealth v. Robinson-Pettet Co., 181 Ky. 702, 205 S. W. 774; Urban v. Commonwealth, 196 Ky. 775, 245 S. W. 852. Following this rule it has been held that an instruction on self-defense which grouped together the evidence of former acts of violence on the part of the deceased, and charged that the accused had the right to bear arms openly and keep a lookout for deceased, and that if he casually met him he need not wait to be assaulted but might consider the past, and that, if he believed he was in apparent danger of great bodily harm at the hands of the deceased, he might shoot him, was improper. Reynolds v. Commonwealth, 114 Ky. 912, 72 S. W. 277. It has also been held improper to tell the jury that they could convict on circumstantial evidence, Whitehead v. Commonwealth, 192 Ky. 428, 233 S. W. 890; Bullington v. Commonwealth, 193 Ky. 529, 236 S. W. 961; or that they could not convict on such evidence unless the circumstances were of such character and tendency as to exclude every rational theory of the case consistent with the prisoner's innocence, 11 Bush, 282; or that the court wanted the jury to try the case alone on the evidence given by the witnesses on the witness stand, "including the dying declaration of the deceased." Jones v. Commonwealth, 186 Ky. 283, 216 S. W. 607. There are cases, of course, where evidence is admitted for the purpose of impeachment, or is given by an accomplice, and it is necessary to give an instruction limiting its effect, but the case in hand is not of that character. The prior threats as well as the language and conduct of the deceased were admissible as substantive evidence. The jury had already been instructed to acquit the accused if they believed from "all the facts

and circumstances proven in evidence'' that, at the time he shot and killed the deceased, he then believed and had reasonable grounds to believe that the deceased was then and there about to kill him, or inflict upon him some great bodily harm, &c., and it was just as improper to single out and limit the effect of the prior threats and language and conduct of the accused at the time of the difficulty as it would have been to particularize and minimize any other fact or circumstance tending to sustain the plea of self-defense. It follows that the instruction complained of was erroneous, and, the case being a close one on facts, we are not prepared to say it was not prejudicial to the substantial rights of the accused.

Judgment reversed and cause remanded for a new trial consistent with this opinion.