## Vanhoose v. Commonwealth.

(Decided Nov. 6, 1936.)

**38**

DAVID BROWNING for appellant.

B. M. VINCENT, Attorney General, and J. J. LEARY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY— Reversing.

Estill Vanhoose has prayed an appeal from a judgment convicting him of driving a motor vehicle while intoxicated, and fixing his punishment at a fine of $100 and the cancellation of his driver's license for one year.

It is first insisted that the evidence was insufficient to support the verdict.

The undisputed facts are as follows: Vanhoose had been a taxi driver in Ashland for several years, and was employed by Ray Alif, manager of the 400 Taxi Company. On March 7, 1936, Vanhoose, who had been on duty all night, went to the Queen City Restaurant about 10 a. m. to answer a call. He was accompanied by Azzie Meade, a sixteen year old boy, who frequently visited the taxi office. On reaching the restaurant they found Mr. Geist, who desired to go to the Chemical Company plant, twelve miles below Ashland. On arriving at the Chemical Company plant Geist changed his mind and directed Vanhoose to drive him back to the Keystone Restaurant in Ashland. While there Vanhoose asked for the fare. Geist refused payment, stating that he had been robbed. After an argument Vanhoose called Alif, his employer. After Alif arrived, Vanhoose, under his direction, drove the taxi to the taxi office about one square away. Officer Lane came up as Vanhoose was driving away. Lane remained there about eight minutes trying to learn who was driving the taxi and the name of the boy with the driver. He then drove around the block to the taxi office and arrested Vanhoose on the charge of "drunk driving." According to Azzie Meade, who went with Vanhoose, Mr. Geist said that he was feeling bad and told Vanhoose he wanted a drink. Van-

hoose stopped and got a half pint of whisky for him. They never drank any of it while he was in the taxi—never broke the seal. As they came back from the Chemical Company plant, Geist had the taxi stop at Lookout House, and ordered three bottles of beer, curb service. He and Geist each drank a bottle of beer; but Vanhoose drank only one-third of a bottle. Vanhoose was not drunk or drinking to any extent, and handled and drove his car perfectly on the trip. About 20 minutes later he saw Vanhoose at the taxi office and Vanhoose was not drunk. John Scott, the proprietor of the Keystone Restaurant, testified in substance as follows: Vanhoose and Mr. Geist came in about 12:30 or 1:00 p. m. Geist was drinking and Vanhoose was drinking. They took at least one drink together while in there. Vanhoose called Ray Alif and Alif came. Alif called for the police and Vanhoose drove away. Geist said he had no money, or not enough to pay his fare. Frank Shilling loaned him the money, and when the officer came Geist paid Alif the taxi fare. The officers were there ten or twelve minutes, or maybe longer, after Vanhoose left. According to Officer Lane, he arrested Vanhoose in the taxi office as he was intoxicated. About an hour later he visited Vanhoose in jail and he was in a drunken condition and failed to wake up when he searched him. On the question of his condition and the extent of his drinking Vanhoose testified in substance as follows: On his way to the Chemical Company plant, Geist asked him to get a half pint of whisky, which he did. It was not opened on the trip and not until they were within three squares of the Keystone restaurant. He had been up all night and did not drink anything except one-third of a bottle of beer until after they stopped at the C. & O. depot and the Keystone restaurant, where Geist treated him to a bottle of beer. He was not drunk while driving around to the taxi office, or under the influence of intoxicants to any extent so as to impair his driving. After he checked in and was off duty he took a drink from a bottle in the office. That drink, together with the bottle of beer, began to take effect and he could feel it, but he was not intoxicated when arrested. He knew nothing about Lane searching him in jail, as he was tired and worn-out from being out all night, and it was 1:45 p. m. when he was put in jail. According to Carl Vanhoose, he was on duty at the taxi office when Estill Vanhoose came in. Estill asked where

the bottle of whisky was and took a drink of it after he had gone off duty. Fifteen or twenty minutes later Officer Lane came in and arrested Estill for being drunk. Dorothy Murphy testified she was in the Keystone restaurant when Estill Vanhoose came in. She knew Estill Vanhoose and if he was drinking it did not show on him. She never noticed anything that made her think he was drinking at all. Ray Alif, who operated the 400 Taxi, testified that when he told Vanhoose to take the taxi to the office Vanhoose was not intoxicated, but he could tell that he had had a drink. If he had been intoxicated he would not have directed him to drive the taxi around to the office.

In discussing the sufficiency of the evidence, counsel for appellant stresses the fact that on the one hand we have the evidence of Vanhoose, supplemented by that of several witnesses, that he was not intoxicated, and that the only evidence to the contrary is that of Officer Lane, who did not see Vanhoose until several minutes after he had stopped driving. Of course it is not necessary to prove intoxication of the driver of a motor vehicle by one who actually accompanies the driver, but his condition before and after the driving may be considered. John Scott, who saw the accused on his arrival at the Keystone restaurant, testified that Geist was drinking and the accused was drinking, and that they both took at least one drink together while in there. In addition to this, Officer Lane testified that when he arrested Vanhoose in the taxi office he was intoxicated. Also we have the statement of Vanhoose that he was tired and worn-out from being out all night, and knew nothing about Lane searching him in the jail. Of course, something more than a mere preponderance of the evidence, or a mere disparity in the number of witnesses, is required before it can be said that a verdict is flagrantly against the evidence, and looking at the case in the light of all the circumstances we are constrained to the view that the question of intoxication was for the jury.

The admission of improper evidence presents a more serious question. While Azzie Meade was on the stand he was asked: "What, if anything, did the defendant give you and say to you while you were in the rest room at the C. & O. depot?;" and was permitted over the objection of the accused to give the following answer: "Vanhoose gave me $10.00 and said, 'Come up

to the taxi office after a while.' " It is admitted that the answer had no bearing whatever on the question of intoxication, but insisted that its admission was not prejudicial. If the answer be considered by itself, there is room for the argument, but it must not be overlooked that Geist claimed to have been robbed, and the circumstance that the accused did the unusual thing of giving the witness so large a sum as $10, and saying, "Come to the taxi office after a while," was calculated to create in the minds of the jurors the impression that he was probably guilty of the charge and was endeavoring to buy the silence of the witness. As the case is a close one on the facts, the evidence in question may have turned the scales against the accused, and we are not prepared to say that its admission was not prejudicial to his substantial rights.

Judgment reversed, and cause remanded for a new trial not inconsistent with this opinion.