## Falls v. Commonwealth.

(Decided May 21, 1937.)

**C.** A. NOBLE and ELBERT STRONG for appellant.

HUBERT MEREDITH, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Upon trial of the appellant, Herbert Falls, on an indictment accusing him "of the crime of malicious shooting and wounding with intent to kill" Eb Spicer (but from which shooting and wounding he did not die), he was convicted and his punishment fixed at two years imprisonment.

The picture of the factual setting, out of which this trouble arose, resulting in the shooting and wounding by Falls of the prosecuting witness, Eb Spicer, is set out and described by the evidence as follows:

On the Saturday night of April 20, 1936, it appears that the appellant, Falls, and the prosecuting witness, Eb Spicer, each went with a party of friends to a nearby roadhouse, situated at the forks of the road about midway between their homes at Neon and Seco, two small mining towns in Letcher county, Ky.; also, that at this roadhouse there was maintained a small reception room, where patrons of the house were privileged and accustomed to dance to the music of a Victrola.

It appears that the appellant, who, according to the testimony of the commonwealth's witnesses, was upon this occasion more or less intoxicated, was engaged from time to time during the evening in dancing with Mrs. Walters and Mrs. Sowards, the two ladies of his party. Also, it appears that Eb Spicer too, as the evening wore on, was seized with the desire to participate in the dancing and, so motivated, he unsuccessfully attempted to "break in" on these women as they were dancing together and again when each was later dancing with the appellant.

The testimony is that they declined to allow Spicer to "break in" on them or to dance with him, for the reason assigned that they did not know him and also that he appeared to be drinking.

The evidence offered for fixing the blame, or showing how the trouble arose between the appellant and Spicer, and who of the two caused it, is very conflicting,

the testimony of the appellant and his witnesses being and tending to show that as the two ladies of his party, Mrs. Walters and Mrs. Sowards, were dancing together, or when they were in turn dancing with him, the prosecuting witness, Spicer, attempted to "break in" on them and dance with them, which overture, of invitation or willingness, of this friendly and forward stranger they declined, refusing to give or divide with him a dance, whereupon, Spicer, irked by their unresponsiveness, resorted to getting himself a man dancing partner, with whom, in bouyant rapport, he proceeded to both enthusiastically dance and, with irrepressible hilarity, to repeatedly bump into the appellant and his then "lady partner," either Mrs. Walters or Mrs. Sowards; that appellant had thereupon, without effect, sought to arrest this continuous disconcerting and boisterous display of vim and vigor, by asking Spicer to kindly stop his boisterous bumping into them. However, no relenting ruth assuaged the surging, vaulting spirit of Spicer and his dancing comrade, who, deaf to appellant's insistent imploring for peace and comely order, soon again bumped into them with such upsetting force as to almost knock them down; that Spicer's annoying misconduct having reached such peak of effrontery, appellant then struck the obstreperous Spicer a sturdy blow with his own brawny fist, believed potent to fell and quell, only to have counter blows returned by Spicer and other of his friends aiding him, when appellant, floored by their combined assault and seeing Spicer, with upraised arm, again about to strike him with some object he held in his hand, courageously drew his gun and shot him through the arm, after which the appellant with backward yet militant step retreated from the battle by backing out of the room, with pistol drawn, and brandished at his "ganging foes," until, meeting a deputy sheriff at the door, he turned over to him his pistol and later submitted himself to arrest.

On the other hand, the testimony for the commonwealth gives a very different and less colorful account of this dramatic scene, staged at the roadhouse, and the hapless cause and simple origin of the trouble resulting in the appellant's admitted shooting of Spicer.

To such effect, Spicer, when testifying in regard to it, thus narrates his version of the trouble between

him and apellant, in which he, also, is coroborated by the testimony of his witnesses:

"Well I was up there dancing, we started off, me and another fellow started out on the floor dancing and he (appellant) was dancing with a man's wife, it was pretty crowded and you couldn't keep from hitting somebody with your elbows and I kindly got against Herbert Falls and he turned around and seen who it was and he turned and hit me * * * and when he done that I hit him and knocked him—I struck at him again and hit him and he * * * pulled out a pistol and the gun fired and struck me * * * through the arm."

Spicer further testifies that he did not have a pistol or any weapon on this occasion and was not drinking, but that the defendant was, and was intoxicated, and that after he shot him, Falls said, "Does anybody else want any around over the crowd?" and then went backing out the door with his pistol in his hand. He also testifies that he had earlier been dancing with a girl, but that at the time he was shot he was dancing with his friend, Lloyd Pike; that while dancing, the floor was very crowded and he could not keep from "rubbing" into the other dancers, but that he only "rubbed" into the appellant and his "lady partner" one time while he was dancing; that the appellant, during the dance, had also bumped into him, the witness, at a time when he had his back turned to him, when the appellant then hit him in the back, when he turned around and hit him with his fist; that he, the witness, hit the appellant twice, once in the face, when appellant drew his gun from down in his shirt and shot him; that neither his friend, Pike, nor any one else was on appellant's back or holding him and that he alone was in the fight with appellant.

Upon the submission of the case to the jury upon this conflicting evidence and the instructions of the court, it returned a verdict finding the defendant guilty and fixing his punishment at two years' imprisonment. Appellant's motion for a new trial being overruled, judgment was pronounced on the verdict. From this judgment he appeals, asking its reversal upon the grounds: (1) that the verdict of the jury is against "the great weight and preponderance of the evidence"; (2) that the court erred in its rulings on the evidence;

and (3) that the court erred in the instructions given the jury.

Turning now our attention to the discussion and disposition of these objections in the order made, we deem it sufficient to say, in answer to the first of these, that the record discloses, as is patent from the above summary given thereof, a very sharp conflict between the testimony for the commonwealth and that given for the appellant, as to the cause of this difficulty and as to who was at fault in bringing it on.

There is very substantial and ample evidence given on behalf of the commonwealth conducing to show that Spicer, upon this occasion, was not at fault or to blame for his admitted bumping into the appellant and his partner when dancing, but that the appellant bumped into Spicer and was the first to start the trouble between them by striking him and later shooting him. Conceding that the evidence for appellant was in striking contrast and conflict with the commonwealth's account thus given of it and that there was a strong showing made by appellant that the whole trouble, resulting in his shooting of Spicer in his alleged self-defense, arose out of the desire of Spicer and his friends to start a "roughhouse" and "gang" out the appellant, the determination of these questions, from such evidence, does not rest with us, nor are we authorized, where there is any substantial proof to support the verdict, to disturb it, inasmuch as the jury is in such case the sole judge of its weight and credibility. Muncy v. Commonwealth, 265 Ky. 730, 97 S. W. (2d) 606. A reviewing court is not authorized to disturb the finding of the jury made, as here, on strongly conflicting evidence, or to substitute its views for those of the jury, as expressed in its verdict. Krone v. Commonwealth, 265 Ky. 389, 96 S. W. (2d) 1052.

Such being the law, it follows that appellant's contention, that the verdict is here against the "great weight and preponderance of the evidence," is sufficiently answered in observing that more than a mere preponderance of evidence, or a mere disparity in the number of witnesses, is required before it will be determined on appeal that the verdict should be set aside. It is only where it is found by us that the verdict is flagrantly against the evidence that it is

within our province to reverse it. Vanhoose v. Commonwealth, 266 Ky. 37, 98 S. W. (2d) 49.

As to the second objection, that the court's rulings on the evidence were erroneous, we find it to be altogether without merit and frivolous to such a degree as to dispense with all need of here extending our opinion by discussing it.

The final objection is a criticism of instructions Nos. 1 and 3 given the jury.

As to instruction No. 1, it is criticized as being erroneous in that the court thereby told the jury that if they believed from the evidence the defendant, Herbert Falls, "willfully, maliciously and not in his necessary or apparently necessary self-defense, shot Eb Spicer," they should find him guilty as charged. Appellant contends that the words "willfully" and "maliciously" should not have been separated by a comma, as was done in the instruction, but that the word "and" should have been used in place of the comma, or that the two words should have been used in the conjunctive rather than the disjunctive way, as he contends was done by the use here of the comma, or, in other words, that the instruction should have exactly followed the words used in section 1166, Kentucky Statutes, to define the charged offense.

We do not incline to the view that the use here made of the comma in lieu of the word "and" in the instruction is in its effect disjunctive, or could in any way be taken to convey to the jury the idea that it was instructed to find the defendant guilty, if they found that he had willfully or maliciously, rather than willfully and maliciously, shot the defendant.

The criticism, as we view it, is well answered in brief of appellee, to the effect that where, as here, there are "three or more words or phrases grouped together, the first of which are separated by commas and the last two connected by the conjunction 'and', the use of the commas merely indicates the omission of the word 'and' between each of the separate words or phrases. It is quite clear * * * that the jury was plainly told that they must believe that the shooting was done wilfully and maliciously and not in self-defense before they could find defendant guilty."

However, counsel for appellee further contends,

we conceive properly, that even .conceding, though only arguendo, that the criticism made of the instruction is sound, such error of the court, in failing to insert the word "and" between the words "maliciously" and "willfully," was cured •by instructions Nos. 2 and 4, as by No. 2 they were told that if they believed from the evidence the shooting was done "in sudden affray or in sudden heat and passion, *without malice,* and not in his (appellant's) necessary or apparently necessary self-defense," they should find the defendant guilty of a misdemeanor and by No. 4 were further told that if they had a "reasonable doubt" of the defendant's having been proven guilty under instruction No. 1, that they should give him the benefit of the doubt and find him guilty of the lower offense. ·(Italics ours.)

In other words, the instructions, when considered together and as a whole, we are of the opinion clearly informed the jury that before they could convict the appellant of the felony offense for which indicted, they must believe that the shooting was done maliciously, otherwise they should give him the benefit of the doubt and find him guilty of the lower offense, as done without malice or in sudden affray.

Further, appellant assails instruction No. 3 in failing to charge the jury that, "if the prosecuting witness and those associated with him on the occasion were the aggressors and had first assaulted appellant and knocked him to the floor and were advancing on him, ·he had the right to fire the shot in order to repel their assault."

It is sufficient answer to this to say that the giving of such an instruction as asked would have in itself been improper, if couched in such language, in that its effect would have been to have stressed particular parts of the evidence. The instruction as given, we are of the opinion, was proper and covered all the defendant was entitled to ask in the way of his right of self-defense, in telling the jury that he had the right to shoot upon the occasion in evidence, "if the defendant believed and had reasonable grounds to believe that he was then and there in danger of death or the infliction of some great bodily harm at the hands of said Eb Spicer, or Eb Spicer and any other person or persons then· present · and acting with him, and that it was necessary or was believed by the. defendant in the

exercise of a reasonable judgment to be necessary to shoot said Eb Spicer in order to avert that danger, either real or to the defendant apparent.''

It is our conclusion that this instruction as given was proper and granted appellant every right thereunder to which he was entitled.

It is appellant's final contention that the court erred in failing to define in its instruction the words ''willfully'' and ''maliciously.''

This criticism, too, we are of the opinion is without merit.

In answer to such criticism, in the late case of Shelton v. Commonwealth, 255 Ky. 745, 75 S. W. (2d) 494, 500, it was said, ''The criticism of instruction No. 3 is that it did not define the words 'feloniously' and 'maliciously'; but we have often held that such defining instructions were unnecessary. The same complaint was expressly overruled in the Adams Case, supra [Adams v. Commonwealth, 212 Ky. 334, 279 S. W. 332], with citation of other prior ones to the same effect,'' and it was there held that the homicide instruction was not erroneous because of failing to define the words ''feloniously'' and ''maliciously.'' See, also, Perkins v. Commonwealth, 218 Ky. 802, 292 S. W. 498.

After a careful consideration of the whole record, it is our conclusion that the instruction given, when considered as a whole, correctly submitted to the jury the law relative both to malicious shooting and shooting in sudden affray, the former a felony and the latter a misdemeanor; and that the evidence sustains the verdict returned by the jury, finding appellant guilty of the former. Therefore, no error to the prejudice of the substantial rights of the appellant appearing, the judgment is affirmed.