**Hance MARCUM, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 23, 1972.

James J. Varellas, Lexington, for appellant.

Ed W. Hancock, Atty. Gen., M. Curran Clem, Asst. Atty. Gen., Frankfort, for appellee.

STEINFELD, Chief Justice.

On the 29th day of December, 1970, appellant Hance Marcum was arrested and charged with operating a motor vehicle while under the influence of intoxicating beverages. KRS 189.520(2). Upon trial by jury, he was found guilty and fined $100. On this appeal he contends that the court erred in admitting in evidence the results of a breathalyzer test, that KRS 189.-520(4)(c) is unconstitutional, and that the court erred in instructing the jury. We reverse.

Before the trial began Marcum moved for a dismissal " * * * on the basis that the breathalyzer is totally inadmissible in that there is no showing it is any more reliable than a lie detector test or a truth serum which has been held to be inadmissible." The motion was overruled and the case proceeded to trial.

The arresting officer testified that he was attracted to Marcum's truck when the tires squealed as it started from a traffic light. He followed Marcum for several blocks during which time he observed erratic driving, and when Marcum failed to stop as directed by a stop-sign the officer then turned on the blue light, a spotlight and an electronic siren, which Marcum disregarded. The accused drove on until he reached his residence, some eight or ten blocks from the place where the officer had attempted to stop him. The officer testified that he immediately confronted Marcum who showed symptoms of being intoxicated; specifically, his eyes were watery, he was slobbering, he was unable to stand without leaning on the truck, he dropped his wallet twice while attempting to display his driver's license and was unable to produce the license. The officer stated that he advised Marcum he was under arrest for driving while intoxicated. At the police station Marcum was requested to take a breathalyzer test; he agreed and did so.

■ The police officer who gave Marcum the test testified as to his qualifications, which showed he was skilled in administering such tests. In great detail he explained how the machine was prepared, how the test was given and the results obtained. Marcum's test indicated that he had, by weight, a 0.15% blood-alcohol concentration. The officer testified that this is over the presumptive level of intoxication (0.10%) in this state. Marcum argues that the testimony with respect to his test did not show that it complied with basic requirements. He cites State v. Baker, 56 Wash.2d 846, 355 P.2d 806 (1960), which held that the proof must show:

"That the machine was properly checked and in proper working order at the time of conducting the test; (2) that the chemicals employed were of the correct kind and compounded in the proper proportions; (3) that the subject had nothing in his mouth at the time of the test and that he had taken no food or drink within fifteen minutes prior to taking the test; (4) that the test be given by a qualified operator and in the proper manner."

An examination of the testimony of the officer who administered the test to Marcum convinces us that these requirements were fully met in all respects. Cf. Soard v. Rogers' Adm'r, Ky., 332 S.W.2d 525 (1960). There is no merit in the argument that the results of the test should not have been admitted in evidence. Cf. People v. Jansen, 130 Ill.App.2d 365, 264 N.E.2d 862 (1970).

■ KRS 189.520 states in pertinent part:

"(2) No person shall operate a motor vehicle anywhere in this state while under the influence of intoxicating beverages or any drug which may impair one's driving ability.

"(4) In any criminal prosecution for a violation of subsections (1) and (2) of this section, wherein the defendant is charged with having operated a vehicle while under the influence of intoxicating

beverages, the amount of alcohol in the defendant's blood as determined at the time of making a chemical analysis of his blood, urine, breath or other bodily substance, shall give rise to the following presumptions:

"(a) If there was 0.05 per cent (5/100%) or less by weight of alcohol in such blood, it shall be presumed that the defendant was not under the influence of intoxicating beverages;

"(b) If there was more than 0.05 per cent (5/100%), but less than 0.10 per cent by weight of alcohol in such blood, such fact shall constitute a presumption that the defendant either was or was not under the influence of intoxicating beverages, but such fact may be considered, together with other competent evidence, in determining the guilt or innocence of the defendant;

"(c) If there was 0.10 per cent (1/10%) or more by weight of alcohol in such blood, it shall be presumed that the defendant was under the influence of intoxicating beverages.

"(5) The provisions of subsection (4) of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether the defendant was under the influence of intoxicating beverages."

Marcum contends that KRS 189.520(4)(c) is unconstitutional in that it creates a presumption of guilt which is squarely in conflict with the presumption of innocence granted to all accused of crime. This argument was rejected in Shumate v. Commonwealth, 207 Va. 877, 153 S.E.2d 243 (1967).

In Commonwealth v. Kroger, 276 Ky. 20, 122 S.W.2d 1006 (1938), we stated:

"It is now well settled that it is competent for legislative bodies to prescribe by their enactments that a certain state of facts shall constitute a presumption of the principal fact, and to thereby cast the burden of overcoming that presumption on the adverse party, even a defendant in a criminal prosecution. See volume 1 of Wharton's Criminal Evidence, 11th Ed. pages 79, 80, sections 69 and 70; 10 R.C.L. 864, section 7; annotations in 51 A.L.R. on page 1179; Smith v. Commonwealth, 196 Ky. 188, 244 S.W. 407; McArthur v. Payne, 201 Ky. 793, 258 S.W. 684; Hughes v. Commonwealth, 242 Ky. 412, 46 S.W.2d 783, and numerous cases cited in those opinions and texts, and other cases decided since those we have listed. But it is equally well settled that such enacted presumptions may be given only a prima facie effect and not a conclusive one so as to bar the opposing litigant, or the defendant in a criminal or penal action, from the right to rebut it. It is, therefore, incompetent for legislative bodies to prescribe for a conclusive presumption."

See also United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965) and annotation in 16 A.L.R.3d 754.

In 1 Wharton's Criminal Evidence, 12th Ed., §§ 90, 91, it is written:

"Section 90. Statutory presumptions.

"The legislature has control over the rules of evidence and may enact laws declaring that upon proof of one fact another fact may be inferred, thus creating a statutory presumption.

"As in the case of nonstatutory presumptions and inferences, the presumed fact cannot be accepted as established until it is proved that the initial fact from which it is presumed or inferred does exist."

"Section 91. Constitutionality.

"A statute making one fact presumptive or prima facie evidence of another is constitutional if the facts warrant the application of the rule of (1) rational relationship or (2) comparative convenience. Under the first, the statutory

presumption is held constitutional if in the experience of mankind there is a natural and rational relationship between the proved fact and the presumed fact so that in the ordinary experience of man the presumed fact would exist if the proved fact existed. Under the second, the statutory presumption is constitutional if (a) the defendant has more convenient access to proof which would overcome the presumed fact than the prosecution would have to prove the presumed fact, and (b) the placing upon the defendant of the burden of overcoming the presumption does not subject him to an unfair burden or hardship."

Another recognized authority has discussed this subject saying, "If the presumption does no more than create a permissible inference it can hardly be thought that the judge's direction that the jury *may* convict is an invasion of the jury's function." McCormick, Law of Evidence, 1st Ed., § 313, p. 662. Our statute in speaking of a presumption does not authorize the trial judge to express his personal opinion as to the truth or falsity of the evidence. This does not contravene constitutional prohibitions. State v. Childress, 78 Ariz. 1, 274 P.2d 333 (1954); Kay v. United States (4th Cir. 1958), 255 F.2d 476, cert. denied 358 U.S. 825, 79 S.Ct. 42, 3 L.Ed.2d 65 (1958).

Our act requiring submission to blood tests has been discussed in a number of cases such as Banks v. Dept. of Education, Bureau of Rehabilitation, Ky., 462 S.W.2d 428 (1971); and Washburn v. Commonwealth, Ky., 433 S.W.2d 859 (1968). It has had our approval. Craig v. Commonwealth, Ky., 471 S.W.2d 11 (1971). Blood-alcohol tests have withstood attacks in other jurisdictions. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Walton v. City of Roanoke, 204 Va. 678, 133 S.E.2d 315 (1963); Toms v. State, 95 Okl.Cr. 60, 239 P.2d 812 (1952); and People v. Jansen (Ill.App.), 264 N.E.2d 862 (1970). Under our statute there is a " * * * rational connection between the facts proved and the ultimate facts presumed * * * ," therefore, this law appears to be within the limits announced in Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). Also see Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).

The final argument is that the court erred in instructing the jury as to the statutory presumption of intoxication. The attacked instruction was as follows:

"The jury is instructed that if there was a 0.10% or more by weight of alcohol in the blood of the body of the said Hance Marcum at the time and place mentioned above, then it shall be presumed that the said Hance Marcum was under the influence of intoxicating beverages at that time; provided, however, that such presumption can be overcome by evidence."

Marcum relies on Stanley's Kentucky Instructions to Juries, Vol. 3, § 779, which indicates that instructions are not the place for presumptions or to indicate the import of any particular fact or set of facts. Stanley, at § 781, states:

"An instruction which tells the jury of a presumption which arises from stated facts invades the province of the jury and is erroneous."

This statement is based on our opinion in Smith v. Commonwealth, 122 Ky. 444, 29 Ky.Law Rep. 17, 91 S.W. 1130 (1906), which held that it was improper for the court to instruct the jury on the weight to be given to the evidence of an alibi. Marcum also calls our attention to Botnick v. Commonwealth, 266 Ky. 419, 99 S.W.2d 188 (1936), a prosecution for knowingly receiving stolen property in which the instruction attacked read as follows:

"I may say that you are further instructed that the possession of any stolen goods by a Defendant should be of itself prima facie evidence of guilt."

The statute then provided:

"§ 1199. Receiving stolen goods; possession prima facie evidence.—Whoever shall receive stolen goods, chattels or other thing, the stealing whereof is punished as a felony or misdemeanor, knowing the same to be stolen, shall be liable to the same punishment to which the person stealing the same is, by law, subjected. Such offenders may be convicted, though the principal offender has not been convicted. The possession of any stolen goods shall be prima facie evidence of the guilt, under this section, of any person or persons having such possession. (April 10, 1893, c. 182, p. 756, § 72; amended March 24, 1922, c. 113, p. 345, § 1.)"

We held that the instruction was improper, saying:

"By instruction No. 3 the jury were told that the possession of any stolen goods should be of itself prima facie evidence of the guilt. It is true that section 1199, Kentucky Statutes, so provides, but, with certain exceptions not here material, it has never been deemed proper in this state to instruct on the weight of evidence, Smith v. Commonwealth, 122 Ky. 444, 91 S.W. 1130; Martin v. Commonwealth, 223 Ky. 762, 4 S.W.(2d) 419; or to call attention to any particular fact and indicate its importance, Commonwealth v. Delaney, 29 S.W. 616, 16 Ky.Law Rep. 509; or to single out specific facts or groups of facts and give them undue importance, Tines v. Commonwealth, 77 S.W. 363, 25 Ky. Law Rep. 1233; Murphy v. Commonwealth, 205 Ky. 493, 266 S.W. 33; Urban v. Commonwealth, 196 Ky. 775, 245 S.W. 852. Other courts take the position that, inasmuch as the inference to be drawn from the evidence is strictly a matter for the jury, the trial court should not instruct on the question. R.C.L. p. 72; Gravitt v. State, 114 Ga. 841, 40 S.E. 1003, 88 Am.St.Rep. 63; Lehman v. State, 18 Tex.App. 174, 51 Am.Rep. 298. It follows that instruction No. 3 should not have been given."

Botnick was discussed at length in Mabe v. Commonwealth, 279 Ky. 432, 130 S.W.2d 805 (1939), in which a husband and wife were tried for the offense of selling spirituous liquors without a license. The jury was told in substance that the holding of a federal license to sell alcoholic beverages without being licensed by the state " * * * shall in all cases raise a prima facie presumption that the holder of such Federal permit is trafficking in alcoholic beverages in violation of * * *" the law. The judgment of conviction was reversed for the same reasons as expressed in Botnick.[1] In a knowingly-receiving-stolen-property case, Jones v. Commonwealth, 291 Ky. 719, 165 S.W.2d 566 (1942), Botnick and Mabe were again approved.

To refute Marcum's argument of error in the instructions, the Commonwealth cites State v. Myers, 26 Ohio St.2d 190, 271 N.E.2d 245 (1971), in which a conviction in a drunken driving case was upheld. In discussing the implied consent law, that opinion stated:

"In so providing, the General Assembly has expressed its conviction that the relationship between the objective determination by chemical test of the percentage of alcohol by weight in the blood (15% or more), and its effect on people, is so well scientifically established that it need not be demonstrated by evidence, and may take the place of evidence at trial. The purpose of the presumption is to eliminate the need for expert testimony which would otherwise be necessary to relate the numerical figure representing a percentage of alcohol by weight in

[1]. Wilson v. Coston, 239 Ark. 515, 390 S.W.2d 445 (1965), held it was error to give an instruction that defendant in a civil case was presumed intoxicated by reason of the results of a blood test because " * * * it is a statute relating to admission of evidence in cases of criminal prosecution."

the blood as shown by the result of a chemical test, with the common understanding of being under the influence of alcohol. See Lister v. England (D.C. App.1963), 195 A.2d 260; State v. Protokowicz (1959), 55 N.J.Super. 598, 151 A.2d 396; Vore v. State (1954), 158 Neb. 222, 63 N.W.2d 141. When the test results are in evidence, the evidence that the presumption supplies is the correlation between a scientific fact, the results of the test, and human behavior; that is, that all persons who test .15% or more are under the influence of alcohol."

\*   \*   \*   \*   \*   \*

"We believe that the General Assembly, in enacting R.C. 4511.19(B), fully intended that the trier of the facts be instructed regarding the presumption contained therein when properly administered test results are available. R.C. 4511.191, the implied consent statute, evidences a bold legislative effort to procure a chemical test of body fluid or breath from those suspected of operating a motor vehicle while under the influence of alcohol. \* \* \* Furthermore, the General Assembly has provided a means of producing scientifically reliable evidence bearing on the innocence or guilt, without which the trial of those alleged to have been driving under the influence of alcohol often tends to be turned on emotional rather than factual considerations." The Commonwealth also relies on Kay v. United States, (4th Cir. 1958), 255 F.2d 476, cert. denied 358 U. S. 825, 79 S.Ct. 42, 3 L.Ed.2d 65 (1958), in which it was written:

"Nor does consideration by the jury of the statutory presumptions deprive the defendant of any protected right. The presumptions embody the standards determined, after extensive investigation, by the Committee on Tests for Intoxication of the National Safety Council (1940 Report). They have been adopted by many states, and, recently, the Congress enacted similar presumptions for use in prosecutions in the District of Columbia. The adoption of the standards as evidentiary presumptions serves to dispense with the necessity of expert witnesses to interpret the laboratory findings, but there is nothing objectionable in the legislature's adoption of that course when the standards are reasonable and have attained wide acceptance. \* \* \*

"The presumption here is rebuttable. It neither restricts the defendant in the presentation of his defense nor deprives him of the presumption of innocence. Since wide experience has demonstrated the close connection between the presumed fact and the alcoholic content of the blood, there is no constitutional objection to the jury's consideration, with all of the other evidence, of the statutory presumption. \* \* \*"

■ We reject the reasoning announced in State v. Myers, supra, and Kay v. United States, supra. It is true that the instruction made it clear that the results of the test created a rebuttable presumption which the jury was to consider with all of the evidence, and it left the determination of intoxication for the jury to resolve, as it must be. Vanhoose v. Commonwealth, 266 Ky. 37, 98 S.W.2d 49 (1936).[2] Nevertheless, it is our opinion that the instruction was improper, and we continue to adhere to the principles announced in Botnick v. Commonwealth, supra; Mabe v. Commonwealth, supra; and Jones v. Commonwealth, supra. But see 48 C.J.S. Intoxicating Liquors § 377, p. 582.[3]

2. For discussion of Instructions on Presumptions, see 33 Texas Law Review 598.

3. In answer to a county attorney's inquiry, the Attorney General stated in pertinent part " \* \* \* the trial judge should instruct the jury as to the contents of KRS

189.520 in the trial of a charge of drunken driving where a blood test requested by, and taken by, the defendant has been introduced as evidence. § 225 of the Criminal Code provides, in essence, that the trial court shall instruct the jury on all law applicable to the case. Since the

KRS 189.520(4) establishes and validates a scientific standard which otherwise would require expert testimony. A principal object of the statute is to obviate the necessity of such testimony. Since it is in that sense a substitute for expert evidence on a scientific fact, we are of the opinion that it should be read in connection with the testimony concerning the blood-alcohol content. After that testimony has been admitted, upon appropriate motion the trial judge may read or have read to the jury, as evidence, KRS 189.520(4) and (5) in their entirety without further comment by the court with regard to the weight or effect of the evidence.

The judgment is reversed, with directions to grant appellant a new trial consistent with this opinion.

MILLIKEN, NEIKIRK and PALMORE, JJ., concur.

REED, J., concurs in result only.

blood test is on evidence, it is our opinion that before a jury could effectively consider such evidence they would have to have knowledge of what certain percentages of alcoholic content in the blood would mean. It follows, therefore, that instructions setting out the presumptions contained in KRS 189.520 would be necessary for the jury to be able to consider the evidence in a reasonable manner." OAG 42,547 (December 11, 1958.) (§ 225 of the Criminal Code was transferred to RCr 9.54.)