226 P.2d 101

**CITY OF CLOVIS v. McLAIN.**

No. 5311.

Supreme Court of New Mexico.

Jan. 3, 1951.

Dee C. Blythe, John Humphrey, Jr., Clovis, for appellant.

Earl E. Hartley, Clovis, for appellee.

LUJAN, Chief Justice.

The defendant (appellant) was convicted of having in his possession intoxicating liquors for the purpose of sale in violation of a city ordinance of Clovis, a dry area. He appeals from the judgment and sentence.

The ordinance makes an offense "the sale and/or possession for the purpose of sale of alcoholic liquors."

The defendant asks reversal of the judgment on three grounds: (1) error in overruling his motion at the conclusion of the plaintiff's case in chief, because (a) the plaintiff had failed to sustain its burden of

proof of the guilt of the defendant, (b) the plaintiff had failed to prove the alcoholic content of the liquor introduced in evidence; (2) the judgment was contrary to the weight of the evidence; and (3) error in overruling his motion for a new trial on the ground of insufficiency of the evidence to sustain a conviction.

George B. Ray, Chief of Police of the City of Clovis, testified: That the defendant lived at 312 Axtell Street and that he lived at 312½ on the same street; that his front door was about six or seven feet from the defendant's back or kitchen door; that there was a window on the same side of his front door and a window on the north side of his house. He further testified that Harold Robertson, a taxi cab driver, would drive his taxi to a point within five or six feet of a window in the house of the witness and stop; that sometimes he would honk his horn and the defendant would come out of his kitchen door and walk up to the taxi. Sometimes he would have liquor in his coat pocket; that he would pull the coat back and the taxi driver would take the liquor and lay it down on the seat and pay the defendant in bills. That he stood by the window of his house some six feet away and watched the transactions.

"Q. And did you observe similar transactions on more than one occasion? A. Several, yes.

\* \* \* \* \* \*

"Q. Would you examine each of those bottles of whiskey and identify them? A. This is the liquor taken from the taxi.

"Q. What kind of liquor is it? A. Calverts Reserve, I believe they call it.

\* \* \* \* \* \*

"Q. That was the liquor bottle taken at the time the arrest was made? A. Yes sir, when I got in the taxi I taken it away from Mr. McLain.

"Q. This is the bottle that you saw the taxi driver take out of Mr. McLain's inside coat pocket and pay him for it in bills? A. No sir.

"Q. You didn't see—A. It was previous to this on several occasions, I watched those transactions made, but this, I taken from Mr. McLain in the taxi.

"Q. The other bottles? A. These are the bottles we got after we went back and raided the house, seven pints.

"Q. Where did you find those? A. In the closet.

"Q. What room of the house? A. Well, Mr. McLain stated that the room across there—there is a hallway, and across from this, closet, was his room, and he pointed out to the closet and said there is about ten or twelve pints in there, but there was only seven."

Cross-examined he stated:

\* \* \* \* \* \*

"Q. Now, on what dates did you observe any exchange of liquor for money as you previously testified? A. Well, I don't recall just exactly the date, but several times, during the five or six weeks that Mr. McLain had lived there.

\* \* \* · \* \* \*

"Q. If you previously testified, in City Court, that only on one occasion you saw Mr. Robertson give Mr. McLain some money, in apparent exchange of liquor, which is right, your testimony then, or your testimony now? A. I testified just the same as that, I saw the money paid for the liquor, the liquor transferred from Mr. McLain to the driver, and he paid him for the liquor.

"Q. How many times did you say that occurred? A. Well, I don't recall just the exact amount of times I seen the money transferred, but I did see the liquor transaction.

\* \* \* \* \* \*

"Q. Now, when this case was tried in Police Court, you were very explicit about the date these various things occurred, were you not? A. Yes sir, I had a book that I have lost, the times and the time of day, and the date set down in that book, but I have lost it and can't find it."

█ It is true that the defendant denied having intoxicating liquors on his premises for the purpose of sale or that he ever sold any. It is also true that the taxi driver denied having purchased any intoxicating liquor from the defendant, but these denials did not necessarily work defendant's acquittal. It simply presented a disputed question of fact for determination by the trial court. In our opinion, the testimony of George B. Ray was of a substantial nature and sufficient to sustain the charge if the bottles in fact contained whiskey.

█ Under assignment of error 1-b, the defendant urges that "the city had failed to prove the alcoholic contents of the liquor introduced in evidence." It is to be observed that the defendant did not object to the introduction of the bottles of whiskey found on the premises of the defendant on the grounds urged.

"Mr. Blythe: The defendant wants to object to the offer of City's Exhibit No. 1 into evidence on the grounds it is not shown as to—that it was seized on the basis of any search warrant.

\* · \* \* \* \* \*

"Mr. Hartley: If the court please, we offer City's Exhibit No. 1, consisting of eight pints of whiskey.

"Mr. Blythe: If the court please, at this time, the defendant would like to renew his objection. This evidence is improperly seized, should have had a search warrant.

"The Court: Overruled."

The Chief of Police testified that the liquor which he found at the home of the de-

fendant was labelled "Calverts Reserve Whiskey." In 68 Corpus Juris, page 256, it is said that whiskey is "a generic term with a very definite, special, well defined, and well known meaning, common in the United States, * * * more specifically any alcoholic liquid obtained by distillation of the mash of fermented grain with a specific gravity corresponding to an alcoholic strength of forty-four to fifty per cent by weight, fifty to fifty-eight per cent volume * * *."

The defendant testified:

"Q. Do you drink intoxicating liquors? A. Yes sir.

"Q. Do you customarily keep some in your possession for that purpose? A. That's right.

"Q. Well, just with the knowledge and consent of your nephew Carroll Lepper? A. That I drink.

"Q. Yes. A. Yes sir.

"Q. Keep it on the premises? A. Well, I don't know that he knowed it was there, but he knew I drink it."

Cross-examined he testified:

"* * * * * *

"Q. You just happened to get in his cab one day with the pint in your pocket and got caught huh? Mr. McLain, what brand of whiskey do you drink? A. Well, any of the standard brands do pretty well, Calverts Reserve, Seagram's 7."

 The evidence shows that the liquor obtained in defendant's premises was "Calverts Reserve Whiskey." He was charged with knowledge of the labels on the bottles, and they were descriptive of the articles found in his possession.

Section 61-903, 1941 Comp., Provides: "No alcoholic liquors shall be sold in this state unless the immediate container thereof bears the label, amount of contents, trade-mark, brand or name of the maker, bottler, or wholesale distributors thereof. * * *."

It is common knowledge that whiskey is an intoxicating liquor. There is no merit to the assignment.

After a careful examination of the entire record, we are of the opinion that the judgment of the trial court should be affirmed, and it is so ordered.

SADLER, McGHEE and COMPTON JJ., concur.

COORS, J., not participating.