326 P.2d 669

STATE of New Mexico, Plaintiff-Appellee,

v.

Jack SKIPWORTH, Defendant-Appellant.

No. 6372.

Supreme Court of New Mexico.

June 11, 1958.

Neal & Neal, Hobbs, Hartley & Buzzard, Clovis, for appellant.

Fred M. Standley, Atty. Gen., Howard M. Rosenthal, Asst. Atty. Gen., for appellee.

SADLER, Justice.

The appellant, defendant below, was charged in an information filed against him by the district attorney of the Ninth Judicial District within and for Curry County of possessing alcoholic liquor for sale without a license so to do. Upon the trial, he was convicted and prosecutes this appeal from the sentence imposed upon him by the court.

The evidence disclosed that in a local option election in 1939 Curry County voted against the sale of intoxicating liquors in the county from that date forward. Hence, at the time of the alleged offense, Curry County was "dry" territory. At the trial, B. E. West, sheriff of the county, Russell Miller, Captain of Detectives of the Clovis Police Department, and Paul Gregory and Otis Foster, members of the New Mexico State Police, testified as witnesses for the State. James Drake testified as a witness for defendant, as did Jack Skipworth, who testified in his own behalf.

The evidence further disclosed that a raid was made on a club near Clovis about two o'clock in the morning of June 29, 1957. The club house was located on real estate belonging to defendant, about seventy-five yards from the home in which he resided, only a few miles in the country from Clovis. On arriving at the club, the officers found it in charge of the witness, Drake, the defendant, Skipworth, not being present. Two or three couples were sitting at tables in front of the bar.

There is conflict in the evidence as to just what transpired following arrival of the officers at the so called club house. As indicated, they found the witness, Drake, in charge. He testified the officers sent him to get Skipworth after making known the purpose of their visit. The State's testimony on the contrary disclosed a mere inquiry of Drake whether *he* wished to send for the defendant, Skipworth, to which Drake replied that he did and departed for the purpose of doing so. Upon his return with Drake, the officers exhibited the search warrant to defendant, to the contents of which he appeared indifferent. He told the officers to "go ahead," which they proceeded to do. However, when one of them began pulling out drawers in some of which alcoholic beverages were found, defendant, Skipworth, registered a mild protest by saying, in substance, he thought "that was going a little bit too far."

As a result of the search of the premises, the officers found several six-can cartons of beer, some on ice and some not, as well as four or five bottles of liquor. The building was completely equipped with furniture and fixtures, refrigeration equipment, sinks, etc., and plumbing installation for use as an alcoholic liquor dispensing establishment. It had been used as such previously on a "non-profit" and "club" basis.

The evidence disclosed defendant to have taken out a federal stamp for operation of the establishment which was to expire only one day later, on June 30, 1957, following the raid. James Drake, found in charge at time of the raid, admitted on the stand that he had served as a bartender in other places both before and after the raid and was not shown to be in possession of a federal stamp license at time of the raid.

Indeed, the whole story of the defense was that defendant, Skipworth, had turned over the premises to Drake some three weeks earlier under an oral lease; that Drake was the proprietor and he, Skipworth, had nothing to do with the conduct of the business carried on within the premises.

Apparently, the jury gave little weight to the defendant's testimony concerning the alleged oral lease. In the first place, they saw him exercising the customary authority of an owner and proprietor when he arrived on the scene following a summons from Drake. He told the officers to "go ahead," meaning to search the premises under the authority of the search warrant. Actually, Drake's departure to summon defendant indicated his belief the latter, as a proprietor, should be present when his premises were being searched. Skipworth's seeming indignation at the officers' act in pulling out and searching the drawers by saying he thought this was going "a bit too far," reflects the concern of a proprietor, not an uninterested observer. The jury must have felt it showed the act of a proprietor. The evidence was sufficient to go to the jury. State v. Chambers, 34 N.M. 208, 279 P. 562; State v. Coffey, 35 N.M. 204, 292 P. 228; City of Clovis v. McLain, 55 N.M. 36, 226 P.2d 101.

Aside from the claim of counsel for defendant that the court erred in refusing to direct a verdict of not guilty at the close of the State's case and at the close of all the evidence which, as we have shown, is not well founded, we are urged to overturn the verdict of guilty because of the trial court's refusal to instruct the jury, as follows:

"You are further instructed that an oral lease agreement is as valid as a written lease agreement under the laws of the State of New Mexico."

178

█ Counsel claim they were entitled to this instruction under the evidence, more especially because the instructions given by the court did not cover the tendered issue. We think counsel is wrong in each of these contentions. It was not so much a question of whether an oral lease under the circumstances here present would be valid in New Mexico, as against a written lease but rather one of "possession and control" for purposes of sale of the intoxicating beverages at the time and place in question. If the jury was adequately instructed on this issue, it was not error to refuse an instruction whose only effect might tend to confuse rather than enlighten the jury. And along this line, see State v. Borrego, 52 N.M. 202, 195 P.2d 622. See, also, State v. Sanders, 54 N.M. 369, 225 P.2d 150, 151, where we said:

"Trial court had right to substitute instruction in its own language for defendant's requested instruction applying law to defendant's theory of the case."

Now, let us examine the instructions to see if, actually, they do not adequately charge the jury on the material issues, including the ground covered by the defendant's requested and refused instruction touching an oral lease. Among the instructions actually given by the court will be found the following, to-wit:

"No. 5. The material allegations contained in the information which must be proved to your satisfaction and beyond a reasonable doubt by the evidence introduced in this case are:

"a. That the defendant, Jack Skipworth possessed alcoholic liquor;

"b. That the defendant, Jack Skipworth, intended to sell the alcoholic liquor; (followed by other material components not related to this particular issue).

\* \* \* \* \* \*

"13. You are further instructed that if you find that the building where the alcoholic liquor introduced herein was found was in the possession of or under the control of James Drake, then in law the alcoholic liquor would not be in the possession of the Defendant, Jack Skipworth.

"14. You are instructed that the word 'possession' means having a thing in one's power, the personal right and power to control as the owner or proprietor.

"15. You are instructed that the Defendant is charged with possession of intoxicating liquor for the purpose of sale. You are further instructed that in defining the word 'purpose' the meaning of it is the same as 'intent.'

Therefore, you must believe beyond a reasonable doubt that the defendant intended to sell in Curry County the intoxicating liquor which has been introduced into evidence before you can find the defendant guilty."

Thus it is that under the instructions actually given by the court, whether Drake was in the premises in question by oral or written lease, the defendant must be acquitted if "possession and control" of the proscribed beverages were in him, Drake, rather than in defendant, himself. Drake had never paid any rent and rent was payable at the end rather than at the beginning of each month. He possessed no stamp tax license; Skipworth did.

It seems too plain for words, the jury did not believe the story related by Drake and Skipworth about an oral lease but concluded the whole story was a sham and subterfuge to avoid conviction of defenadnt. See Urban v. Commonwealth, 196 Ky. 775, 245 S.W. 852. See, also, 48 C.J.S. Intoxicating Liquors § 367, p. 546.

Finding no error the judgment will be affirmed.

It is so ordered.

LUJAN, C. J., and McGHEE, COMPTON and SHILLINGLAW, JJ., concur.