343 P.2d 841

CITY OF CLOVIS, Plaintiff-Appellee,

v.

Paul WILLIAMS, Defendant-Appellant.

No. 6551.

Supreme Court of New Mexico.

Aug. 31, 1959.

Neal & Neal, Hobbs, for appellant.

Frank B. Zinn, Atty. Gen., Hilton A. Dickson, Jr., Thomas O. Olson, Philip R. Ashby, Asst. Attys. Gen., Paul P. Shwartz, Sp. Asst. Atty. Gen., for appellee.

MOISE, Justice.

This is an appeal from a conviction in the district court of Curry County of violation of an ordinance of the City of Clovis prohibiting anyone from having in his possession alcoholic beverages for the purpose of sale in said city.

Appellant was charged in the city court and upon trial was found guilty. He appealed this conviction and was tried de novo in the district court. At the conclusion of the trial, the trial court found him guilty of violating the ordinance "in that the said Paul Williams did have in his possession alcoholic beverages for the purpose of sale in the City of Clovis, New Mexico," and sentenced him to pay a fine of $300. This appeal followed.

The facts as developed by evidence at the trial disclosed the following: Appellant was the operator of a legally licensed dispensary located at Taiban, New Mexico, and lived in the city of Clovis. At the time of his arrest which was about 8:00 o'clock P.M., he was entering the city of Clovis, accompanied by another man, in a bus which was painted yellow as school buses in New Mexico are commonly painted and with the words "School Bus" written across it. The arrest was made by two city policemen on instructions from the chief of police. One policeman testified that upon arriving at the police station, Williams made a statement that he wanted to see the chief of police, and that the liquor "was for the Shriners." Some thirty minutes later he was booked and at that time stated "that was still his whiskey."

Another witness testified at the time of the arrest appellant stated that he was taking some of the liquor to the Elks Club, some to the Shriners, and some to Lee Sasser (it appears that he is the operator of a club known as the La Posta Supper Club). This same witness stated that when appellant was being booked he said, "I believe you are making a mistake, this (is) my liquor and it is mine until it is sold."

Lee Sasser took the witness stand for the prosecution and testified that at the time appellant was in the police station Sasser had come to the station with some signed orders for liquor and cash with which to pay for it; that he had come there to try to obtain the liquor represented by the orders; however, that it had been confiscated by the police and couldn't be delivered, and appellant said he would keep it and "that it was his, until further time." Sasser described the arrangement for obtaining liquor whereby he had orders signed in triplicate, one copy would be delivered to the appellant; however, on the day in question the orders had been called to appellant

at Taiban giving him the order for specific quantities of specific brands for specific customers to be delivered to Sasser in Clovis. No arrangement was made as to who was to make the delivery, but appellant had stated he was coming in and would bring it.

The chief of police testified that appellant stated that he could "haul it anywhere in Curry County, it belongs to the Shriners, the Elks and Sasser" and also that "he stated two or three times that he could haul it anywhere in New Mexico, that it belonged to him," or that, "it belongs to me, I can haul it any place in Curry County I like," and at another time stated that he was taking the wine to his place at Cu-Quay.

The only witness produced by appellant was one Pat Knight who described herself as the manager or as an employee of the Elks Club since the previous month. She described the procedure followed in obtaining liquor from appellant. She would take orders from members of the Club and phone them collect to appellant's place of business at Taiban. On the day in question she had tried to get some one to get it and bring it in, but being unsuccessful, called appellant at his home in Clovis and asked him if he would bring it in and he said "he would if he could." She didn't know how payment was to be made for the liquor, and she collected no money to pay for it. An inventory introduced in evidence showed that

at the time of the arrest the truck carried 109 fifths of various brands of bourbon, scotch, vodka, rum and gin; 5 cases of Tokay wine in pints; 5 cases of Tokay wine in fifths; 10 cases of beer in quarts (3 brands); 46 cases of beer in 12-oz. cans (4 brands). All liquor had cancelled New Mexico revenue stamps attached, except on one bottle there were two stamps, and on another the stamp was absent.

The appellant states, "the sole question of law presented by this appeal is whether or not under the foregoing facts (his statement of the facts differs somewhat from the foregoing, which is a summary of pertinent evidence taken from the transcript) the sale had been consummated at the Taiban store or was to be consummated in the city of Clovis in violation of the city ordinance," and then undertakes to support his position that the sale having been made in Taiban there was no unlawful possession in the city of Clovis.

To accomplish this he cites an opinion of the Attorney General, being No. 58-15, dated January 20, 1958.

The Attorney General, in his opinion, held that where a sale of liquor was consummated on the premises of the licensee, he could legally deliver the liquor in another county or municipality, but where the sale was consummated upon delivery of the merchandise, he could not legally do so. In reaching this conclusion the Attorney Gen-

eral quotes a portion of 46 Am.Jur. 587, being a part of § 415 of the title on Sales. The material part of this section (only partially quoted in the opinion) reads as follows:

"* * * Where the buyer transmits an order to the seller and, without the intervention of a carrier, the seller fills such order by a delivery personally or through his agent to the buyer at the latter's place of residence, the view is generally taken that the buyer's place of residence is to be deemed the place of sale. The same has been held true where the seller without the intervention of a carrier fills an order received directly from the buyer by delivery at the buyer's place of residence and at the time collects the price. On the other hand, the view is taken that where a seller doing business in one place receives an order from a buyer residing in another place, and in pursuance of such order sets the goods apart for the buyer and charges them to him, the sale is then complete, and . the seller's place of business is to be deemed the place of sale, although thereafter the seller without the intervention of a carrier delivers the goods to the buyer at his place of residence, since in the subsequent delivery the seller acts as the bailee of the buyer."

Under certain circumstances, the sale is considered in law to have been made at the place of business of the seller when the goods have been set apart to the purchaser and have become his property. Commonwealth v. Hess, 148 Pa. 98, 23 A. 977, 17 L.R.A. 176. Also, where the seller delivers it to a common carrier consigned to the purchaser, generally the carrier is considered the agent of the purchaser and the sale is complete at the place of delivery to the carrier unless it was the intention of the parties or the contract provided otherwise. 46 Am.Jur. 605, § 440.

The rule is stated thus in 44 L.R.A.,N.S., 450, where many cases are cited in support thereof:

"The general rule established by the great weight of authority, in accord with the rule as to sales generally,—though it rests upon the presumed intention of the parties, and is liable to be overthrown by circumstances rebutting the presumption,—is that when an order is given for liquor not then specifically identified or appropriated, and the seller in the ordinary course of business delivers it to a common carrier, consigned to the buyer, the title passes and the sale is deemed to take place at the point of shipment, and not at the point of destination."

The case of Johnson v. Yellow Cab Transit Co., 10 Cir., 137 F.2d 274, affirmed in 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814, relied on strongly by appellant, is such a case.

The rule is different, however, where the delivery is made by the seller. In the note in 44 L.R.A.,N.S., 463, the note writer has the following to say:

"Generally,—though, as subsequently shown, there are exceptions,—where the delivery is made without the intervention of a common carrier it is held that the sale is made at the place where the buyer actually receives the liquor, unless it appears that the liquor was received from the seller by one acting as agent for the buyer. * * *"

The note writer in 44 L.R.A.,N.S., 437, states it thus:

"As to sales generally, the intention of the parties, gathered from their contract in the light of surrounding circumstances, is the true criterion as to when and where the title passes (1 Mechem, Sales, § 477). Comparatively few of the cases relating to sales of intoxicating liquor repudiate this criterion, even when they involve a question as to the violation of a statute prohibiting or restricting the sale of liquor. * * *

"However, in a majority of the cases, whether involving liquor or other commodities, the contract, even when viewed in the light of the circumstances, does not indicate the explicit, specific intention of the parties as to the place where the title shall pass, and it is therefore commonly necessary to solve that question by the application of prima facie rules based upon the presumed intention of the parties."

As a rule for determining intention, the Uniform Sales Act sets down as Rule 5 of sub-section 19, the following:

"If a contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

██ 2 Williston on Sales, Revised Edition, 1948, in § 279a, states that this rule sets forth the doctrine of the common law. Applying the rule to the instant case it is apparent that the court as the trier of the facts had the duty to determine the intention of the parties. This he has done by his decision, holding that title had not passed at the time the liquor was found in the possession of the appellant, but that he had it in his possession for sale. Can we then say, as a matter of law, that this was error? We believe not. When all of the facts are considered, including the fact that appellant was delivering a large quantity of beer, wine and liquor in the evening in a bus painted and marked as a school bus, made conflicting statements as to the ownership, including the statement in effect

that he could haul it any place he wished, and that it was his until sold, how can it be said to have been error to find that appellant had the same in his possession for delivery and sale? The facts, as proved are fully consistent with such a result and the trial judge being the trier of the facts was in the best position to determine the true intention of the parties from all the testimony, and from the appearance and demeanor of the witnesses. The evidence is more substantial than that held sufficient in the case of City of Clovis v. Dycus, 62 N.M. .419, 311 P.2d 648, and certainly as convincing as that in State v. Chambers, 34 N.M. 208, 279 P. 562.

As stated in City of Clovis v. McLain, 55 N.M. 36, 226 P.2d 101, 103, the denial of the appellant that he had intoxicating liquor in his possession for purposes of sale did not necessarily work his acquittal. "It simply presented a disputed question of fact for determination by the trial court." The evidence being substantial from which the court could find that no sale had been finally consummated, but that appellant had the possession of the liquor for delivery at which time the sales would be completed, it was sufficient to sustain the charge.

■ One additional argument of appellant should be noted. § 46–7–11, N.M.S.A. 1953, provides that any person selling a closed package of alcoholic liquor to a consumer shall "then and there" mutilate the stamp on the bottle. In the instant case these stamps were mutilated so that the bottles could not be put back in stock and, accordingly, had been effectively removed from the channels of legal trade. Appellant argues that ascribing to the act of cancelling the stamps at the store in Taiban, the intention to so appropriate the liquor to the particular sale which would thereupon be a legal act is to be preferred to ascribing an intent to violate the law.

Although this argument has been recognized in certain cases noted in 44 L.R.A., N.S., 437, it is our opinion that the fact of the cancellation of the stamps was no more than one piece of evidence touching upon the intent of appellant. To give it the conclusive weight sought by appellant would be out of all proportion to its true place in the total picture painted by the evidence. The court having heard this evidence, and certainly being aware of the law relative to cancellation of stamps, nevertheless found appellant guilty. We do not think there was any error present in so doing.

The judgment should be affirmed, and

It is so ordered.

LUJAN, C. J., and McGHEE, COMPTON and CARMODY, JJ., concur.